George C. FONSECA, Appellant,

v.

STATE of Texas, Appellee.

No. 04–93–00485–CR.

Court of Appeals of Texas, San Antonio.

Sept. 13, 1995.

---

Robert Switzer, Switzer, Carroll & De Prado, San Antonio, for appellant.

Steven C. Hilbig, Criminal District Attorney, Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for appellee.

Before CHAPA, C.J., and
HARDBERGER and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

George C. Fonseca was charged and convicted of murder with a deadly weapon and sentenced to ninety-nine years in prison and fined $10,000. Fonseca appeals. Because the trial court erroneously excluded four witnesses' hearsay testimony indicating the murder was not committed by Fonseca but by another, we reverse and remand this case for a new trial.

### FACTUAL BACKGROUND

At approximately 11:00 p.m., Joseph Esquivel and Duke Castorena were visiting with their friend, James Humphreys, on Humphreys' front porch. When a car passed by the house, Esquivel looked towards the street and saw two armed males under the street light on the corner, approximately 150–200 feet away. Just as Esquivel shouted to his friends to duck, the two men opened fire with semi-automatic weapons. Esquivel and Castorena escaped uninjured. Humphreys, however, was fatally wounded. When the police arrived, Esquivel told them the gunmen were Ben Davila and Fonseca, whom Esquivel knew only as the brother of his girlfriend's former best friend. Esquivel later picked Davila and Fonseca out of a photograph lineup. Although Castorena was inexplicably never questioned by the police, he testified at trial that the gunmen were Davila and Fonseca.

## EXCLUDED HEARSAY

In his first point of error, Fonseca complains that the trial court erred in excluding the testimony of Blas Castillo, Eddie Gonzalez, Elizabeth Fonseca, and Brian Ziegler as inadmissible hearsay. We agree.

 Fonseca's defense at trial was misidentification. In support of that defense, he introduced a motel registration card allegedly signed by him on the day of the murder, as well as the testimony of the motel clerk that she generally put the check-in time on the registration and, if she failed to do so, it was likely because the check-in was during her busy time between 8:00 and 11:00 p.m. Fonseca also called the people who lived on the corner near the murder, and each of these witnesses testified that, despite being substantially closer to the gunmen than Esquivel and Castorena, they were unable to describe the gunmen's facial characteristics. Finally, Fonseca sought to introduce the following testimony:

Blas Castillo: On the day of the murder, at approximately 9:00 p.m., Castillo and his wife went to a party at Mike Montes' sister's house, which was around the corner from Humphreys' house. Montes and Davila were outside drinking. When Castillo asked them what was going on, Montes said they were getting ready to "rock 'n roll." Davila started laughing and said they were getting ready to rock 'n roll at James Humphreys' house.

Within days after the murder, Castillo again saw Montes. Montes told Castillo that he and Davila had killed Humphreys.

Eddie Gonzales: While performing his duties as a detention officer, Gonzalez happened to have a conversation with Davila while the latter was in jail. Davila said that he did not know why they had arrested Fonseca, because he had not shot Humphreys; the man who shot Humphreys was still out in the free world.

Elizabeth Fonseca: Elizabeth Fonseca, Fonseca's sister, testified that Montes and Davila came to her apartment the day after the shooting. Montes told Elizabeth and her husband that they had gotten drunk at Montes' birthday party, which had been at Montes' sister's house, and later killed Humphreys.

Brian Ziegler: Ziegler, a mechanic who worked on Fonseca's and Montes' cars, saw Montes about four months after the murder. Montes told him that he and Davila shot Humphreys. Montes also said that he knew Fonseca wanted Montes to turn himself in. However, once Ziegler had agreed to help Fonseca by letting him use his car as collateral for bail, Montes made it clear that he would not turn himself in.

The State objected to the testimony of these four witnesses as inadmissible hearsay and not admissible "statements against interest" under Rule 803(24), Tex.R.Crim.Evid.

Rule 803(24) provides, in relevant part:

**Statement Against Interest.** A statement which ... at the time of its making ... so far tended to subject [the declarant] to ... criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In this case, it is beyond question that the statements by the declarant, Mike Montes, to Castillo, Elizabeth Fonseca and her husband, and Ziegler implicated Montes in Humphreys' murder and thus tended to expose him to criminal liability. The pertinent inquiry, therefore, is whether "corroborating circumstances clearly indicate [the] trustworthiness of the statement." This issue is subject to an abuse of discretion standard of review. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim.App.1994) (en banc).

 On appeal, we are to consider the factors that militate both in favor of and against the trustworthiness of the statement, including "whether the guilt of the declarant is inconsistent with the guilt of the accused; whether the declarant was so situated that he might have committed the crime; the time of the declaration and its spontaneity; the

party to whom the declaration was made; and the existence of independent corroborating facts." *Id.* at 312. However, we may not consider the "credibility of the in-court witness," since credibility presents an issue for the jury. *Id.* "The overriding consideration is that the requirement of corroboration should be utilized and construed in such a manner as to effectuate its purpose of circumventing fabrication." *Id.*

We begin with the non-hearsay testimony of Castillo, which was clearly admissible and not subject to a hearsay objection. Castillo's testimony places Montes with Davila—drinking—at a party at Montes' sister's home around the corner from Humphreys' home approximately two hours before Humphreys was murdered. We next turn to Castillo's hearsay testimony that Montes told him approximately two hours before the murder that he and Davila were going to "rock 'n roll" at Humphreys' house and that, the day after the murder, Montes told him he and Davila had in fact killed Humphreys. We believe the circumstances corroborating the trustworthiness of these statements include the following:

(1) These statements were against Montes' penal interest at the time they were made. Although Esquivel had identified Davila and Fonseca as the gunmen, the police had not yet charged either man with the crime.

(2) Montes was with Davila, who was also indicted for Humphreys' murder, approximately two hours before the murder.

(3) At the time he was seen with Davila, approximately two hours before the murder, Montes was within a few blocks of Humphreys' home.

(4) Montes made these statements to Castillo, whom Montes presumably considered a friend.

On the other hand, there is nothing in the record before us to place Montes with Davila or in the vicinity of Humphreys' home at or near the time of the murder and nothing to indicate any motive Montes might have had for murdering Humphreys. By the same token, however, there is nothing in the record indicating Fonseca's motive for doing so.

■ Were we to consider Castillo's testimony only in this light, we believe the trial court would have acted within its discretion in excluding Castillo's hearsay testimony. However, Castillo's hearsay testimony was corroborated by Elizabeth Fonseca and Ziegler, who testified that Montes had also told them that he and Davila had murdered Humphreys. Castillo's testimony is also corroborated by that of Gonzalez, who testified that Davila told him that Fonseca had not shot Humphreys. Fonseca argues that this testimony constitutes "corroborating circumstances" for purposes of Rule 803(24). The State, on the other hand, argues that we cannot consider hearsay testimony as "corroborating circumstances."

We agree with Fonseca. As the Court of Criminal Appeals recently stated, "[w]e cannot agree that consistent (or for that matter inconsistent) testimony from the defendant, *or any party*, is not a valid consideration in assessing trustworthiness." *Cunningham*, 877 S.W.2d at 313 n. 2 (emphasis added). While it may be that, in using the word "party," the court intended to limit its statement to the parties to the case, we believe it more plausible that the court used "parties" to mean witnesses. This interpretation is most consistent with Rule 1101(c)(1), TEX. R.CRIM.EVID., which requires the court to determine preliminary questions of fact— such as whether there are sufficient "corroborating circumstances" to render hearsay testimony admissible under Rule 803(24)— without regard to the rules of evidence. *Cf. Cunningham v. State*, 846 S.W.2d 147, 150 (Tex.App.—Austin 1993) (indicating that sufficient corroborating circumstances might include "proof that the statement was against the declarant's interest to an unusual or devastating degree" or "that the declarant repeated his story often and consistently"), *aff'd*, 877 S.W.2d 310 (Tex.Crim.App.1994).

As noted above, neither we nor the trial judge may assess the credibility of the excluded hearsay testimony; accordingly, for purposes of ruling on its admissibility, we must assume its truth. We believe that, when taken together, the excluded testimony tells a consistent, cohesive story that could, if believed, create a reasonable doubt in the

minds of jurors as to whether Esquivel and Castorena were mistaken in their identification of Fonseca as one of the gunmen. It may also be that the jurors in a second trial will credit Esquivel and Castorena's unequivocal eyewitness testimony over the excluded hearsay testimony of these witnesses. To make that determination, the jury must hear both.

### CONCLUSION

We hold that the trial judge abused his discretion in excluding the testimony of Blas Castillo, Eddie Gonzalez, Elizabeth Fonseca, and Brian Ziegler. We hasten to add, however, that it was an abuse only when viewed in retrospect. At the time the testimony was offered and the ruling made, neither the parties nor the trial judge had the benefit of the Court of Criminal Appeals' decision in *Cunningham* or its precursor, *Davis v. State*, 872 S.W.2d 743 (Tex.Crim.App.1994).

Fonseca's first point of error is sustained, and this case is reversed and remanded for a new trial in accordance with this opinion. Because Fonseca's first point of error is dispositive of this appeal, we do not consider his remaining points.