PD-1666-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/4/2015 3:35:13 PM
Accepted 2/6/2015 2:38:55 PM
ABEL ACOSTA
CLERK

*Oral Argument Requested*

## NO. PD-1666-14

### IN THE TEXAS COURT OF CRIMINAL APPEALS

_____

### JOSE ISMAEL ARREOLA,
#### Appellant
### V.

### THE STATE OF TEXAS,
#### Appellee

_____

### FROM THE FIFTH DISTRICT COURT OF APPEALS
### CAUSE NO. 05-13-00181-CR

---

### APPEAL FROM THE 195TH DISTRICT COURT
### DALLAS COUNTY, TEXS CAUSE NO. F-12-00581-N
### THE HONORABLE FRED TINSLEY PRESIDING

_____

### APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
_____

**GARY UDASHEN**
**STATE BAR NO. 20369590**
**gau@sualaw.com**

FILED IN
COURT OF CRIMINAL APPEALS

February 6, 2015

ABEL ACOSTA, CLERK

**SORRELS, UDASHEN & ANTON**
**2311 CEDAR SPRINGS ROAD**
**SUITE 250**
**DALLAS, TEXAS 75201**
**(214) 468-8100 Office**
**(214) 468-8104 Fax**

**ATTORNEY FOR PETITIONER,**
**Jose Ismael Arreola**

## GROUNDS FOR REVIEW

I.     Did the court of appeals err by holding evidence of specific prior acts of violence inadmissible to show that the victim was actually the first aggressor in light of conflicting holdings from sister courts?

II.    Did the court of appeals err in its interpretation of the statement against interest hearsay exception to exclude otherwise admissible testimony when they failed to conduct an inquiry into the corroboration of the statement as required by case law?

## IDENTITY OF PARTIES AND COUNSEL

For Appellant Jose Arreola:

Michael J. Todd
*Trial Counsel*
Law Office of Michael J. Todd
700 N. Pearl Street
Suite 2170
Dallas, Texas 75201

Kenneth Weatherspoon
*Trial Counsel*
325 North St. Paul Street
Dallas, Texas 75201

Gary Udashen
*Appellate Counsel*
Sorrels, Udashen & Anton
2311 Cedar Springs Suite 250
Dallas, Texas 75201

For Appellee the State of Texas:

Jerry Varney & Brandi Wade
*Trial Counsel*
Dallas County District Attorney's Office
133 N. Riverside Drive
Dallas, Texas 75027

Martin L. Peterson
*Appellate Counsel*
Dallas County District Attorney's Office
133 N. Riverside Drive
Dallas, Texas 75027

# TABLE OF CONTENTS

**Page**

GROUNDS FOR REVIEW ..................................................................................ii

IDENTITY OF PARTIES AND COUNSEL...................................................iii

TABLE OF CONTENTS ...............................................................................iv

INDEX OF AUTHORITIES ........................................................................... v

STATEMENT REGARDING ORAL ARGUMENT ........................................ 1

STATEMENT OF THE CASE AND PROCEDURAL HISTORY ...............................2-3

ARGUMENT

      I.      PRIOR ACTS OF VIOLENCE BY THE VICTIM WERE
            ADMISSIBLE TO SHOW SHE WAS IN FACT THE FIRST
            AGGRESSOR ...................................................................................4-13

            a.      Ramon Guillen's Testimony .......................................5-9

            b.      Ronald Castro's Testimony .........................................9-13

      II.     WITHOUT ANALYSIS THE COURT OF APPEALS
            ERROENOUSLY EXCLUDED TESTIMONY AS HEARSAY
            THAT QUALIFIED AS A STATEMENT AGAINST PENAL
            INTEREST ...................................................................................13-16

CONCLUSION AND PRAYER ................................................................... 16

CERTIFICATE OF SERVICE .................................................................... 17

CERTIFICATE OF COMPLIANCE ........................................................... 18

APPENDIX ................................................................................................ 19

# INDEX OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Arreola v. State*, No. 05-13-00181-CR,
2014 Lexis 13047 (Tex. App. – Dallas, Dec. 5, 2014).................................................. 3, 8, 15

*Bingham v. State*, 987 S.W.2d 54 (Tex. Crim. App. 1999)....................... 11, 13, 14, 15, 16

*Davis v. State*, 872 S.W.2d 743 (Tex. Crim. App. 1994) ........................................... 14, 16

*Dudzik v. State*, 276 S.W.3d 554 (Tex. App. – Waco 2008, pet. ref'd.) ..... 4, 5, 7, 9, 10, 13

*Fonseca v. State*, 908 S.W.2d 519 (Tex. App. – San Antonio, 1995)......................... 11, 16

*Hayes v. State*, 161 S.W.3d 507 (Tex. Crim. App. 2005) .............................................. 5, 10

*MacDonald v. State*, 179 S.W.3d 571 (Tex. Crim. App. 2005) ........................................... 4

*Mozon v. State*, 991 S.W.2d 841 (Tex. Crim. App. 1999) ........................................... 4, 5, 8

*Poteir v. State*, 68 S.W.3d 657 (Tex. Crim. App, 2002) ..................................................... 12

*Smith v. Dretke*, 417 F.3d 438 (5th Cir. 2005) ................................................................... 5

*Tate v. State*, 981 S.W.2d 189 (Tex. Crim. App. 1998) ......................... 4, 9, 10, 12, 13, 16

*Torres v. State*, 71 S.W.3d 758 (Tex. Crim. App. 2002)................................................ 5, 10

*United States v. McClure*, 546 F.2d 670 (5th Cir. 1977) ................................................. 12

*Walter v. State*, 267 S.W.3d 883 (Tex. Crim. App. 2008) .................................... 11, 14, 15

*Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007) ........................................... 12

## Codes and Rules

TEX. R. EVID. 404 ............................................................................................ 4

TEX. R. EVID. 803 ................................................................................. 10, 11, 14

TEX. PENAL CODE § 22.01 ....................................................................... 11, 15

TEX. R. APP. P. 66.3 ................................................................................... 4, 13

## STATEMENT REGARDING ORAL ARGUMENT

Arreola believes that oral argument will be helpful to this Court to resolve the issues presented herein, which are fact intensive, and implicate conflicting court of appeals holdings.

# STATEMENT OF THE CASE AND PROCEDURAL HISTORY

On June 21, 2012, an indictment was filed against Jose Ismael Arreola ("Arreola") charging him with the aggravated assault of then-girlfriend Maria Escamilla ("Escamilla") on or about March 13, 2011. (CR: 5). On February 4, 2013, after a ten-day trial, a jury convicted Arreola and sentenced him to twenty-eight years in the Texas Department of Corrections. (CR: 50, 55-57). Arreola timely filed his notice of appeal. (CR: 59).

Escamilla and Arreola were the only witnesses to what took place at their home on March 13, 2011. At trial, Escamilla testified that Arreola attacked her without provocation in their driveway after a night out at clubs in Dallas and that a violent attack continued throughout their home. (RR5: 52-69). Escamilla denied drinking that night, although she admitted to having blackouts when drinking, and she denied ever becoming angry with Arreola over other women that night. (RR6: 29-33, 42-51, 90-91, 148-149).

Arreola testified that he and Escamilla were both drinking all night and that Escamilla became angry with him at a nightclub over other women. (RR9: 44, 53-54, 59-69). Arreola testified that an argument ensued on the way home and Escamilla came at him with knives inside the home. (RR9: 68-69, 81-85). Arreola testified that he acted only in self-defense but admitted to kicking Escamilla, throwing her against a wall, and holding her hand over a knife blade in attempt to stop her attacks. (RR9: 81-129).

During the guilt-innocence phase of Arreola's trial, he sought to introduce testimony from two witnesses regarding specific prior acts of violence committed by Escamilla. (RR10: 45-53; 70-77). First Arreola proffered the testimony of Ramon Guillen

Appellant's Petition for Discretionary Review - Page 2

("Guillen"), Escamilla's ex-husband, regarding three times Escamilla attacked him. (RR10: 70-77). Specifically, Guillen testified that Escamilla attacked him at a nightclub, in their home, and at his workplace after accusing him of cheating on her with other women. *Id*. The State objected to this testimony as prejudicial and irrelevant due to remoteness of time. (RR10: 76). The trial court excluded this testimony without explanation and Guillen was only allowed to testify to his general opinion that Escamilla is a violent person. (RR10: 76-77).

Likewise, Arreola proffered the testimony of Escamilla's friend Ronald Castro ("Castro") regarding two specific criminal acts of violence that she admitted to Castro. First, Castro testified that after he purchased a vehicle from Escamilla, she told him that she used the vehicle to run over some people outside of a nightclub after an argument. (RR10: 47-49). Also, he testified that Escamilla told him she had shot at people from the sun-roof. *Id*. The trial court excluded the testimony as hearsay. (RR10: 52-53).

Accordingly, on appeal Arreola argued, in part, that the trial court abused its discretion by excluding these specific acts of violence by Escamilla, which were admissible to show that she was the first aggressor in the altercation with Arreola. *Arreola v. State*, No. 05-13-00181-CR, 2014 Lexis 13047 (Tex. App. – Dallas, Dec. 5, 2014). The court of appeals affirmed Arreola's conviction finding that Guillen and Castro's testimony did not "reflect the kind of state of mind evidence that could explain Escamilla's purported aggression toward appellant." *Id.* Furthermore, the court of appeals found that Castro's testimony was inadmissible hearsay, which did not qualify as a statement against Escamilla's interest. *Id.*

## ARGUMENT

## I. PRIOR ACTS OF VIOLENCE BY THE VICTIM WERE ADMISSIBLE TO SHOW SHE WAS IN FACT THE FIRST AGGRESSOR

The court of appeals erroneously concluded that Escamilla's prior acts of violence were not admissible to show that she was the first aggressor in the altercation with Arreola because the acts demonstrate her intent, motive, and state of mind. Also, the court of appeals erroneously concluded that Castro's testimony was hearsay because the statements qualify as a statement against Escamilla's interest. The court's exclusion of this evidence directly conflicts with sister court's holdings on the same issue, which fundamentally impacted Arreola's right to a fair trial, thus this Court should grant review and reverse and remand Arreola's case for a new trial. *See* TEX. R. APP. P. 66.3(a).

**Applicable Law**

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *MacDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). A victim's prior specific acts of violence may be admissible if offered for a non-character purpose such as proof of a specific intent or motive. See TEX. R. EVID. 404(b). In a prosecution for aggravated assault, evidence of a victim's character for violence is admissible to show that the victim was the first aggressor. *See Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999); *see also Dudzik v. State*, 276 S.W.3d 554, 560 (Tex. App. – Waco 2008, pet. ref'd.); *Tate v. State*, 981 S.W.2d 189, 193 (Tex. Crim. App. 1998). Specific acts of violence or aggression by a victim are admissible to show the victim was the first aggressor and are relevant apart from showing character

conformity by demonstrating the victim's intent, motive, or state of mind. *Id*; *see also Hayes v. State*, 161 S.W.3d 507, 509 (Tex. Crim. App. 2005) ("where a defendant claims self-defense, the deceased's prior threats may be admitted, even though those threats were not directed at the defendant, "as long as the proffered [threats] explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only.") (citing *Torres v. State*, 71 S.W.3d 758, 761-62 (Tex. Crim. App. 2002). The prior specific acts of violence do not have to be directed toward the defendant. *See Mozon*, 91 S.W.2d at 841; *see also Dudzik*, 276 S.W.3d at 560; *Smith v. Dretke*, 417 F.3d 438, 441-41 (5th Cir. 2005). Rather, the prior violent acts must tend to explain the violent or aggressive acts raised in a self-defense claim. *See Dudzik*, 276 S.W.3d at 560 (trial court abused its discretion by excluding victim's prior acts of violence, which tended to show that the victim was actually the first aggressor by demonstrating the victim's state of mind when he hears racial slurs).

a)      **Ramon Guillen's Testimony**

Guillen's testimony regarding specific acts of violence Escamilla committed against him is admissible because it tends to show that she was in fact the first aggressor against Arreola. Specifically, these acts demonstrate Escamilla's motive and her state of mind in regard to relationships with men, jealousy over other women, and her state of mind when clubbing and drinking.

Guillen offered the following testimony:

> "Q.    (BY MR. TODD):   Did you have an occasion where you saw her out at some club?
>
> A.      I was at a club one time, and I thought everything was

over. I don't know the exact date. But she attacked me at a club and ripped my shirt. She said she bought me this chain and ripped it off and we got kicked out of the club. But she ripped my shirt – I can't remember if I covered up my face – she just went crazy

Q.     Now, based upon your interactions with her and her subsequent actions you've seen in her, do you have an opinion as it relates to whether she's violent or not?

A.     Yes, she is. (RR: Vol. 10, p. 69)
. . .
Q. Now, during the time period that you-all were together, did you-all have any altercations where she could have attacked you?

A.     Yes. She would accuse me of cheating on her when I later found out it was her. That's one of the reasons I left her. One of my buddies came and told me she was cheating on me. And when I got them together, she still denied it.

We were talking about the attacks. So I accused her of giving me an STD and later found out that it was just a yeast infection. But I was on the toilet sitting down and I told her. And we were at our apartment.

We had an apartment in DeSoto. She broke the door down and ripped my shirt. I can't remember if I covered up my face or whatnot, but she lost it. She's out of control. And as soon as she did that, she just got up and left.

And there was another occasion where I was working security at a shopping center. And I was escorting a lady out to her car. And she had been drinking. She shows up. And she accused me of sleeping with this lady. I believe her name was Pauline. I had to hold Mary back in order to let this lady leave. And I kept shutting the door on her car so she would [not] get out.

As soon as Pauline left, we were the only ones in the shopping center. I let her out and she started running after me. I thought it was funny. I am – we're running around the shopping center, and I'm laughing at her.  And I'm telling her to calm down and whatnot, but she won't. She's still running after me. Somebody ended up calling the cops . . .

So she got arrested that night. If that doesn't tell you that she doesn't have respect for the law, what does that tell you about me?

Q. So all of that together, that goes into your opinion that she's a violent person?

A. Yes. And when she couldn't catch me, she keyed my car; put "Mary" on the hood of my car. I had some low-rider rims that are called "roadsters," and they have a centerpiece. But that centerpiece is held together from a lung nut with a cable. I mean, it's a quarter-inch cable. They're not easy to come off.

She yanked those things like they weren't even there. And she threw them at the windows of my car. Didn't break but just trying to throw them at me like they were rocks while chasing me around the parking lot. So she is a violent person, yes, sir. (RR10: 71-73).

The court of appeals summarily concluded that these acts of aggression do not reflect a state of mind that could explain Escamilla's aggression toward Arreola. However, that conclusion wholly ignores conflicting case law and the similarities between the aggression that Guillen describes and the aggression Arreola described. *See Dudzik*. 276 S.W.3d at 560 (trial court erroneously excluded witness testimony about an incident similar to the one the defendant was charged with). First, Guillen describes an attack at a nightclub when Escamilla, "just went crazy." (RR10: 72-73). Arreola also testified that the problems with Escamilla began at a nightclub. (RR9: 59-69). Second, Guillen describes incidents when Escamilla would become violent after accusing him of cheating. (RR10: 71-73). Likewise, Arreola and others testified that Escamilla was angry over other women at the club the night of the incident. (RR9: 59-69); *see Dudzik*. 276 S.W.3d at 560. These acts show not only Escamilla's state of mind in these types of situations but her motivation for attacking Arreola.

Escamilla's violence against Guillen would explain her actions against Arreola as

he described them. The trial court's exclusion of this testimony denied Arreola the opportunity to present evidence crucial to his theory of self-defense. *See Mozon*, 991 S.W.2d at 844-47. The court of appeals incorrectly noted that "the only incident Guillen related that involved jealousy over another woman did not result in any violence toward him at all." *Arreola v. State*, No. 05-13-00181-CR, 2014 Lexis 13047 (Tex. App. – Dallas, Dec. 5, 2014). However, Guillen described having to hold Escamilla back from attacking another person, Escamilla chasing him, and vandalizing his car when she could not get her hands on him. (RR10: 71-73). These acts of violence or at least aggression tend to explain Escamilla's relentless attack on Arreola not because of conformity of character but because they illustrate her mind set in similar situations. Furthermore, Guillen testified that Escamilla was drinking before at least one incident of violence, which also explains her aggression toward Arreola who testified that she was drinking that night.

In sum, it is difficult to see how the court of appeals could conclude that these acts of aggression do not shed light on Escamilla's state of mind and motive to show that she was the first aggressor. More importantly, the court's exclusion of this evidence conflicts with a court of appeal's decision directly on point in *Dudzik*. *See Dudzik*, 276 S.W.3d at 560. In that case, Dudzik was charged with assaulting a bouncer at a nightclub, while he admitted to punching and stabbing the bouncer he claimed it was in self-defense because the bouncer came at him after he called him a racial slur. *Id* at 556-59. Dudzik sought to introduce testimony from a third party to show that the victim was in fact the first aggressor. *Id* at 560. In that case, the trial court excluded testimony from a witness that,

in a completely unrelated incident years prior, the victim had attacked him after he used a racial slur. *Id*. The court of appeals found, "[B]ecause Dudzik testified that Henry was the first aggressor, he was entitled to offer evidence of extraneous acts of violence by the victim. Therefore, the court abused its discretion by excluding this evidence." *See Dudzik*, 276 S.W.3d at 560.

Therefore, the court's holding here is in direct conflict with this case because like the trial court in *Dudzik*, the trial court excluded testimony that would have shown Escamilla's intent, motive, and state of mind. Also, like *Dudzik*, the specific acts of violence, which Guillen would have testified to, involve similar circumstances to those Arreola testified to finding himself in when Escamilla attacked him. Finally, the Court of Criminal Appeals in *Tate* held that where "proffered evidence tended to make the existence of a consequential fact more probable," namely that the victim was the first aggressor, the defendant had the right to present that evidence to the jury and the trial court's exclusion was an abuse of discretion. *Tate*, 191 S.W.2d at 193.

**b)** <u>**Ronald Castro's Testimony**</u>

The court of appeals erroneously concluded that Castro's testimony was inadmissible because the incidents he described did not reflect Escamilla's state of mind in her altercation with Arreola and the testimony was properly excluded as hearsay.

Escamilla admitted to Castro that she had run people over outside of a nightclub following an altercation at the club and that she had shot at people from the roof of the same vehicle, which she was in the process of selling to Castro. (RR10: 47-49). First, these prior acts of violence by Escamilla again establish her motive and state of mind

when she gets into arguments with people. Specifically, the conduct tends to explain her state of mind when she is out at clubs as she was with Arreola. The court of appeals focuses solely on the fact that these acts of violence do not involve jealousy over other women without considering other similarities between these incidents. *See Dudzik*, 276 S.W.3d at 560. Furthermore, these acts of extreme aggression show Escamilla's intent and state of mind generally when she is in an altercation with someone particularly when she is out a club drinking. That she is willing to shoot at people and run them down in cars sheds light on her intent when she comes at Arreola with knives after an argument in a club. *See Hayes*, 161 S.W.3d at 509; *See Torres*, 71 S.W.3d at 761-62. Arreola was entitled to offer her extraneous acts of violence to show that she was the first aggressor. *See Dudzik*, 276 S.W.3d at 560. As explained above, the court's exclusion of this testimony directly conflicts with sister court's holdings on the same issue. *Id*; *see also Tate*, 191 S.W.2d at 193 (trial court abused its discretion in excluding evidence when "a reasonable jury could have believed this evidence shed light upon [the victim's] state of mind when he arrived at appellant's house on the night in question, and as it was otherwise admissible, appellant possessed the right to present it for the jury.").

Escamilla's admission of violence to Castro also constitutes an exception to the hearsay rule, which allows statements against a declarant's interest. The Texas Rules of Evidence provide:

> "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's

position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." TEX. R. EVID. 803(24).

This exception is based on the commonsense notion that "a reasonable person would not normally claim that he committed a crime, unless it were true." *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008). There is a two-step inquiry should be conducted in deciding whether to admit a statement under 803(24); first whether the statement tends to expose the declarant to criminal liability and whether the declarant realized this when making the statement, and second, whether there are corroborating circumstances that clearly indicate the trustworthiness of the statement. *Bingham v. State*, 987 S.W.2d 54, 57-58 (Tex. Crim. App. 1999).

First, the court of appeals concludes that Escamilla's statements that she (1) ran over people and (2) shot at people are insufficient to establish that they could expose her to criminal penalties. Clearly, running people down in a car over an argument and shooting at people are criminal acts capable of causing serious bodily injury. *See* TEX. PENAL CODE § 22.01. Furthermore, Escamilla herself acknowledged that these acts were capable of exposing her to criminal liability, she told Castro, "she ran over some folks and got away with it so it was a good thing that she was selling it." (RR10: 48). The second prong of this hearsay exception is met because Escamilla made the self-inculpatory statements to Castro, who was her friend at the time, which is a factor indicating the trustworthiness of the statement. *See Fonseca v. State*, 908 S.W.2d 519, 522 (Tex. App. – San Antonio, 1995) (the fact that the declarant made the statement

against his penal interest to a friend corroborated the trustworthiness of the statement). Thus, the court of appeals incorrectly concluded the statements were inadmissible hearsay, as discussed in additional detail below. Furthermore, the court incorrectly found the specific prior acts did not reflect Escamilla's state of mind, intent and motivation thus admissible to show she was the first aggressor.

The court's error in excluding evidence of prior acts of violence and aggression by Escamilla, which would have explained her aggression toward Arreola, denied him the opportunity to fully present a vital component of his self-defense claim. Ultimately, of course, it would be for the jury to decide what, if any, weight or credibility to attach to Guillen and Castro's testimony but excluding the evidence altogether denied Arreola the opportunity to present his theory, which irreparably tainted the verdict in his case. *Tate v. State*, 981 S.W.2d 189, 193 ("A jury cannot properly convict or acquit absent the opportunity to hear proffered testimony bearing upon a theory of defense and weigh its credibility along with other evidence in the case") (citing *U.S. v. McClure*, 546 F.2d 670, 673 (5th Cir. 1977) (holding the right to present a vigorous defense requires the admission of evidence proffered under Rule 404(b)).

The evidence excluded in this case went to the heart of Arreola's claim of self-defense and thus cannot be said to be harmless. *See Walters v. State*, 247 S.W.3d 204, 221 (Tex. Crim. App. 2007) (the exclusion of self-defense evidence might rise to the level of a constitutional violation if it effectively prevents the defendant from presenting his defensive theory) (citing *Poteir v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App, 2002)). Escamilla's state of mind, motivation, and her intent to harm Arreola on the night

in question is crucial to a jury's understanding of his claim of self-defense. *See id.* This is especially true when considering that Escamilla and Arreola were the only witnesses to the altercation that evening and Escamilla ultimately suffered greater injuries than Arreola. Therefore, her prior specific acts of aggression, which tends to show her state of mind, intent, and motivation in similar situations is probative of whether she was in fact the first aggressor. *See Tate*, 191 S.W.2d at 193; *see also Dudzik*, 276 S.W.3d at 560. Arreola possessed the right to present this evidence for the jury's consideration. *Id*. The denial of that right has a serious impact on the fundamental fairness of his trial and thus should entitle him to relief.

## II. WITHOUT ANALYSIS THE COURT OF APPEALS ERROENOUSLY EXCLUDED TESTIMONY AS HEARSAY THAT QUALIFIED AS A STATEMENT AGAINST PENAL INTEREST

The court of appeals' erroneous interpretation of the statement against interest exception to the hearsay rule led to the improper exclusion of otherwise admissible testimony. The trial court improperly excluded the testimony of Castro as hearsay, which qualified as an admission against interest. (RR10: 47-49). The court of appeals then failed to apply any of the factors laid out by this Court in *Bingham v. State*, which resulted in a finding that is contradicted by the case law and the facts of this case. *See Bingham*, 987 S.W.2d at 57-58.    *See* T. R. App. P. 66.3(c).

**Applicable Law**

The Texas Rules of Evidence provide an exception to the general rule against hearsay statements:

> "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." TEX. R. EVID. 803(24).

The court of appeals correctly noted that there is a two-part inquiry required to determine the admissibility of a statement against interest. *See Bingham*, 987 S.W.2d at 57-58. First, the court must determine whether the statement tends to expose the declarant to criminal liability; second, whether there are corroborating circumstances that clearly indicate the trustworthiness of the statement. *Id*. The standard of review of a trial court's decision to exclude a hearsay statement under this rule is abuse of discretion. *Id*.

While, there is no "definitive test by which to gauge the existence of corroborating circumstances," there are a number of factors that may be considered, including "whether the guilt of the declarant is inconsistent with the guilt of the accused; whether the declarant was so situated that he might have committed the crime; the timing of the declaration and its spontaneity; the relationship between the declarant and the party to whom the declaration was made; and the existence of independent, corroborative facts." *See Bingham*, 987 S.W.2d at 57-58; *see also Walter v.* State, 267 S.W.3d at 890. Corroborating evidence and evidence that undermines the reliability of the statement may both be considered. *Davis v. State*, 872 S.W.2d 743, 749 (Tex. Crim. App. 1994).

However, the credibility of the witness is an issue for the jury. *Id.*

In this case, Castro proffered testimony that Escamilla had admitted to him that she had shot people out of the sunroof of her car and ran people over as she was leaving a nightclub. (RR10: 47-49). The state objected to the testimony as hearsay and the trial court sustained that objection and excluded the testimony as hearsay. (RR10: 45-52). The court of appeals, without any analysis, summarily concluded that the statements failed both prongs of the statement against interest exception. *See Arreola v. State*, No. 05-13-00181-CR, 2014 Lexis 13047 (Tex. App. – Dallas, Dec. 5, 2014); *see also Bingham*, 987 S.W.2d at 57-58 (court noted that the court of appeals two-step inquiry was minimal).

A thoughtful inquiry into the two-step analysis required under this hearsay exception and review of the factors laid out in *Bingham* reveals that the trial court erred by excluding this testimony as hearsay. First, the testimony clearly meets the first step of the two-step inquiry because Escamilla admitted to criminal activity, namely hitting people with her car and shooting people, and her statements to Castro were entirely self-inculpatory. *See* TEX. PENAL CODE § 22.01. Furthermore, Escamilla herself acknowledged that these acts were capable of exposing her to criminal liability, she told Castro, "she ran over some folks and got away with it so it was a good thing that she was selling it." (RR10: 48).

Second, there are sufficiently corroborating circumstances that clearly indicate the trustworthiness of the statement. *See Bingham*, 987 S.W.2d at 57-58; *see also Walter v. State*, 267 S.W.3d at 890. The court of criminal appeals failed to conduct any inquiry into

the factors in *Bingham* to determine whether corroborating circumstances existed. *Id.* First, Escamilla'*s* guilt of these crimes is inconsistent with Arreola's guilt because they make it more likely that she was in fact the first aggressor. *See Bingham*, 987 S.W.2d at 57-58; *see also Tate*, 981 S.W.2d 189. There is nothing to suggest the Escamilla was not so situated that she might have committed these crimes. *Bingham*, 987 S.W.2d at 57-58. In fact, additional evidence from other witnesses, including Escamilla who admitted to having access to guns and shooting at Arreola, despite being a convicted felon, also corroborates Escamilla's statement to Castro that she had shot at people. *Id*; (RR: Vol. 4; p. 219; Vol. 6; pp. 7-8; Vol. 8; pp. 133-137; Vol. 9; pp. 157-167). Also, Castro and Escamilla were friends when she made these statements to him. *Id; See Fonseca*, 908 S.W.2d at 522 (the fact that the declarant made the statement against his penal interest to a friend corroborated the trustworthiness of the statement); (RR10: 47-49). The timing of Escamilla's statement corroborates their trustworthiness because she admitted her crimes to Castro when she was selling him the car she used in connection with the crimes. *Bingham*, 987 S.W.2d at 57-58. Finally, there is no evidence that undermines the trustworthiness of these statements. *See Davis v. State*, 872 S.W.2d at 749. Thus, the court of appeals erred by excluding Castro's testimony as hearsay when it clearly falls under the statement against interest exception to the hearsay rule.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Arreola prays that this Court grant this Petition, reverse the court of appeals' opinion and reverse the judgment of conviction and order the conviction set aside.

Respectfully submitted,


___/s/ Gary Udashen_____
GARY A. UDASHEN
Bar Card No. 20369590
gau@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
214-468-8100
214-468-8104 (fax)

Attorney for Appellant


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review electronically served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on February 4, 2015.


____/s/ Gary Udashen _____
GARY UDASHEN

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(I)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(I)(2)(D) because this petition contains 3,931 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(I)(1).

2. The typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Times New roman.

                                          /s/ Gary Udashen
                                          GARY A. UDASHEN

# APPENDIX

AFFIRM; and Opinion Filed December 5, 2014.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-13-00181-CR
_____

### JOSE ISMAEL ARREOLA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

_____

## On Appeal from the 195th Judicial District Court
## Dallas County, Texas
## Trial Court Cause No. F-12-00581-N
_____

## OPINION

Before Justices Francis and Myers[1]
Opinion by Justice Francis

A jury found appellant Jose Ismael Arreola guilty of aggravated assault, made an affirmative finding that he used a deadly weapon, and set punishment at twenty-eight years in prison and a $5,000 fine. Appellant challenges the sufficiency of the evidence to support the jury's verdict. He also contends the trial court erred by refusing to admit certain testimony purporting to show the complainant was the first aggressor, by failing to limit the definition of culpable mental states in the jury charge to the result of the charged acts, and by making a deadly weapon finding. We affirm.

This is a domestic violence case. Appellant and the complainant, Maria Escamilla, had an on-and-off dating relationship for close to three years. Escamilla testified that on the night of

_____

[1] Justice David Lewis was a member of the panel and participated in the submission of this case, but he did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41(b).

the charged assault, she and appellant attended two parties at nightclubs in Dallas. She described a quiet ride home, but when they arrived at her house, appellant began to choke and beat her. He dragged her by her hair across the driveway to the patio, where he hit her repeatedly with a landscape brick. Then he broke the glass in the back door and dragged her through the door into the living room. Escamilla was in and out of consciousness throughout the attack, but she was aware that while they were in the living room, appellant penetrated her vagina with his penis, bit her on the cheek, inserted something in her rectum, and cut her with a knife in the lower part of her body. She remembered being in her bedroom on the floor, where appellant hit her repeatedly with his hands and other objects, including an aerosol can. Appellant slapped her and punched her in the face, and throughout the attack repeated she was going to die. Escamilla said she was in so much pain that she begged God to let her die. She described her memory of appellant slicing her forehead and her breast with a knife, but said she could not remember how the remainder of her injuries happened. She recalled coming to consciousness in the shower, appellant leaving, and his mother arriving and calling for help. She had few memories of her initial treatment in the hospital.

Appellant testified he and Escamilla argued on their drive home from the second nightclub; Escamilla accused him of being involved with one of her friends who was at the second party. Appellant decided he was going to pick up some of his things at the house and leave. Escamilla said she could not find the keys when they arrived, and he had to break the door with a hammer so they could get in. Appellant denied striking Escamilla, dragging her either outside or into the house, and harming her in any way in the living room. He said when he had gathered his clothes and was walking out of the bedroom to leave, Escamilla came at him with a knife in each hand, saying she was going to kill him. She stabbed him in the hand and the two engaged in a lengthy struggle. He was not able to take the knives away from her, and she

–2–

charged at him three times. After the first time he kicked her in the face. After the second and third times, he threw or "chunked" her away from him, causing her once to land face-first against the bathroom wall and once to come down hard on the toilet seat. Appellant told the jury he never struck Escamilla or used a knife to hurt her in any way. He said her injuries were all a product of their struggling in the bedroom and bathroom while he defended himself from her attacks.

A number of relatives and friends of both Escamilla and appellant testified about their tumultuous relationship. Escamilla and appellant recounted earlier incidents when the other party had been aggressive or violent. On this occasion, however, Escamilla's injuries were significantly more serious than any past incidents described by the witnesses.

Deputy Youngquist of the Dallas County Sheriff's office was the first person to respond to the scene and said "there was blood everywhere . . . [c]eilings, walls, the floor, the bed, the bathroom." He discovered Escamilla wrapped in a sheet in the bedroom; her eyes were swollen closed, her lips cut up badly, and her breasts and hands were cut as well. Because of the injuries to her mouth, Escamilla could only mumble. When asked his evaluation of her condition, Youngquist stated, "Had she not mumbled or spoken, I would have thought she was dead." Brad Burroughs, a fireman-paramedic for the Lancaster Fire Department, testified similarly. He called the home a disaster zone, with blood everywhere. Escamilla was in shock from severe blood loss, and when asked his opinion as to how her injuries had occurred he stated: "My opinion was she was mutilated, beaten to an inch of her life, cut, stabbed. And being that she wasn't bleeding anymore, in my opinion she was left for dead."

When Escamilla reached the hospital she was given transfusions and a chest tube was inserted because broken ribs had punctured her lung, causing air to escape into her chest cavity. A rape kit was performed, which ultimately identified semen in her vagina. Then she underwent

–3–

extensive surgery to repair her numerous wounds. Plates were inserted in her face, and pins were placed throughout her body. Her nearly severed hand was repaired, as were lacerations to her neck, breasts, and back. She also suffered four lacerations in the vaginal area, including one ten-centimeter stab wound that cut through muscle and tissue to the bone, and a second stab wound that penetrated the wall between her vagina and her rectum.

Appellant was charged by indictment with intentionally, knowingly, and recklessly causing serious bodily injury to Escamilla. The jury ultimately found him guilty and answered "yes" to the special issue asking whether he had employed a deadly weapon in that assault.

In his third issue, appellant challenges the sufficiency of the evidence supporting the jury's verdict. Specifically, appellant contends the physical evidence surrounding Escamilla's injuries disproves her account of an assault by appellant and supports his claim of self-defense. When an appellant urges a sufficiency challenge on the basis of his claim of self-defense, we do not look to whether the State presented evidence that refuted self-defense. Instead, we determine, after viewing all the evidence in the light most favorable to the verdict, whether any rational trier of fact (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury is to determine the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Our duty is to ensure the evidence presented supports the jury's verdict and the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

To establish the offense of aggravated assault, the State was required to prove appellant intentionally, knowingly, or recklessly caused serious bodily injury to Escamilla or caused her bodily injury while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN.

-4-

§§ 22.01(a)(1), 22.02(a) (West 2011 & Supp. 2014). Appellant acknowledged he kicked Escamilla in the face and threw her across the bathroom twice. In addition—viewing the evidence in the light most favorable to the verdict—we credit Escamilla's testimony that appellant beat her with his hands, kicked her, and cut her with a knife on her hand, her breast, her forehead, and her thigh, all the while telling her she was going to die. Her doctors testified to the life-threatening nature of those injuries and others, including significant internal injuries to Escamilla's lungs and vaginal area. Appellant's expert testified she was cut with both a straight-edged knife and a serrated knife. Ample evidence indicates appellant was acting intentionally, that he caused Escamilla serious bodily injury, and used deadly weapons in the assault.

Viewing the evidence in the light most favorable to the verdict, we conclude rational jurors could have found the essential elements of aggravated assault beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

Appellant points to what he calls "major inconsistencies" between Escamilla's version of events and the physical evidence at the crime scene; he contends those inconsistencies would not have allowed a reasonable jury to reject his claim of self-defense. Appellant's arguments center on how and where the incident began: although Escamilla testified appellant dragged her through gravel and across a concrete patio, doctors found no gravel in her wounds or "road rash" consistent with such dragging; Escamilla said appellant struck her repeatedly with a landscape brick, but no brick bearing evidence of her injuries was found; she testified appellant then dragged her through a broken glass door, but again doctors found no evidence of glass in her injuries; and she testified that the sexual assault, rectal injury, and some of the cutting injuries took place in the living room, but police found no blood in that room consistent with those injuries. Appellant contends the significant amount of blood found in the bedroom and bathroom was consistent with his version of events.

—5—

Although the physical evidence may not bear out the locations where Escamilla testified she suffered certain of her injuries, it is undisputed she suffered those injuries and that—in some fashion—she suffered them at the hands of appellant. We do not view where the actions occurred as determinative, especially because the nature of Escamilla's injuries could have caused her to be confused as to where she was when she received each injury. Indeed, appellant's own medical expert confirmed that a person who had lost a great deal of blood might experience issues with memory and conscious awareness. Regardless, to the extent the evidence included factual inconsistencies, resolution was within the jury's province. The jury resolves any conflicts in the evidence and is free to accept or reject the defensive evidence. *Saxton*, 804 S.W.2d at 914. In this case, the jury was entitled to believe the testimony of Escamilla and to disbelieve appellant. After viewing all the evidence in the light most favorable to the verdict, we conclude a rational jury could have found against the appellant on the self-defense issue beyond a reasonable doubt. *See id.*

We have determined a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, and could have found against the appellant on the self-defense issue beyond a reasonable doubt. *See id.* We conclude, therefore, that the evidence supporting the jury's verdict is sufficient, and we overrule appellant's third issue.

Our sufficiency review takes into account all evidence the jury heard at trial. That evidence included the fact that Escamilla had prior convictions for aggravated assault, possession of marijuana, possession of a controlled substance, and theft over $20,000. And it included the many arguments between Escamilla and appellant, including his allegation that she once hit him in the head with a frying pan. But in his first and second issues, appellant contends the trial court erroneously excluded certain evidence that would have led the jury to a different verdict. He

argues that two witnesses should have been allowed to testify as to specific acts of violence by Escamilla that would have established she was the first aggressor in the incident before us.

In his first issue, appellant complains of the trial court's exclusion of certain testimony from Ramon Guillen, Escamilla's former husband. Guillen was permitted to testify to his opinion that Escamilla was a violent person, but the trial court excluded his testimony concerning three specific incidents involving Escamilla. First, after their relationship was over, Guillen ran into Escamilla at a club; she ripped off a chain he was wearing that she said she had bought him, and she tore his shirt. Second, during their relationship, he once was sitting in the bathroom and told Escamilla (incorrectly) that she had given him a sexually transmitted disease; she broke the door down and ripped his shirt. Third, also during their relationship, Escamilla saw him escorting a female patron to her car as part of his security job; she accused him of sleeping with the patron, chased him around the parking lot while he laughed at her, and keyed his car. The State established Guillen had not had contact with Escamilla in sixteen or seventeen years, and then objected to the testimony, arguing it was too remote and the facts underlying the three incidents were irrelevant to the facts in the pending case. The trial court sustained the objection.

In his second issue, appellant argues the trial court erroneously excluded evidence from Ronald Castro, a long-time acquaintance of Escamilla. Again, Castro was permitted to testify to his opinion that Escamilla was a vindictive person. But he was not permitted to testify that Escamilla sold him a car and told him, while using that car, "she had ran over some folks and got away with it" and "she had hung out the sunroof and shot at people." The State objected to the proffered testimony as hearsay and argued the statements were not relevant to Escamilla's motive, intent, or state of mind in the instant offense.

We review the trial court's decision to exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). The rules of evidence permit a defendant to offer evidence of the victim's character for violence or aggression when the defendant is charged with an assaultive offense. *Ex parte Miller*, 330 S.W.3d 610, 618 (Tex. Crim. App. 2009). A defendant may offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor. *See* TEX. R. EVID. 404(a)(2); *Miller*, 330 S.W.3d at 619. This character-trait evidence is admissible, however, only through reputation and opinion testimony. *See* TEX. R. EVID. 405(a); *Miller*, 330 S.W.3d at 619. A defendant may not offer evidence of the victim's prior specific acts of violence to prove the victim's violent character and that the victim acted in conformity with that violent character at the time of the assault. *See* TEX. R. EVID. 404(b)(2); *Miller*, 330 S.W.3d at 619. Therefore, to the extent appellant's proffered testimony of specific acts of violence served only to prove Escamilla's conduct was in conformity with her violent character, the testimony was inadmissible.

A victim's prior specific acts of violence may be admissible if offered for a non-character purpose in the particular case, such as her specific intent or motive for an attack on the defendant. *See* TEX. R. EVID. 404(b); *Miller*, 330 S.W.3d at 620. But these specific acts are admissible only to the extent that they have relevance apart from their tendency to show character conformity. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). For example, in *Tate v. State*, the defendant offered evidence through a third party that the victim had threatened to harm the defendant on the night in question. *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998). The court of criminal appeals concluded the evidence of the specific act was probative of the victim's "state of mind and possibly indicated a motive or demonstration of intent behind the confrontation that evening." *Id.* Appellant argues the specific acts these witnesses described were probative, "specifically with regard to [Escamilla's] state of mind in

–8–

relationships with men when she becomes jealous over other women and they tend to explain her aggressive conduct toward [appellant] on the night of the assault." We disagree. The incidents related by Guillen and Castro did not implicate appellant in any way. Nor do they reflect the kind of state-of-mind evidence that could explain Escamilla's purported aggression toward appellant. *Torres*, 71 S.W.3d at 762 ("For purposes of proving that the deceased was the first aggressor, the key is that the proffered evidence explains the deceased's conduct."). The sixteen- or seventeen-year-old acts described by Guillen—tearing clothes and jewelry or chasing him around a parking lot—do not reflect a state of mind consistent with the kind of relentless two-knifed attack alleged by appellant. Further, the only incident Guillen related that involved jealousy over another woman did not result in any violence toward him at all.

As to Castro's proffered testimony, nothing indicated the car-related conduct Escamilla told him about reflected a state of mind relevant to her confrontation with appellant: the incidents did not purport to involve jealousy of another woman in any fashion. Moreover, Castro's testimony would have been hearsay. Appellant argues the statements qualify as statements against Escamilla's interest. *See* TEX. R. EVID. 803(24). To qualify under the statement-against-interest exception, a statement must (1) tend to expose the declarant to criminal liability, and (2) have its trustworthiness clearly supported by corroborating circumstances. *See Bingham v. State*, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999). Here, the proposed testimony fails both prongs: Castro's rendition provides insufficient information to discern whether the statements could expose Escamilla to criminal penalties, and he offered no testimony that indicated the trustworthiness of the statements.

We conclude the trial court did not abuse its discretion in excluding the proposed testimony concerning prior specific acts of violence involving Escamilla. The statements were not admissible under rule 404(b), and Castro's testimony was also properly excluded as hearsay.

Further, the trial court allowed both sides to introduce considerable evidence about Escamilla's prior criminal history and prior conduct with appellant. We overrule appellant's first and second issues.

In his fourth issue, appellant contends he was caused egregious harm by the trial court's failure to limit the definitions of the culpable mental states to the result of the act charged. The trial court submitted definitions on the "nature of the conduct" as well as "result of the conduct."

There are three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2011); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A trial court errs by failing to limit the definitions of the culpable mental states to the conduct element or elements of the offense to which they apply. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). An offense defined by causing bodily injury—such as aggravated assault—is a result-of-conduct offense. *See Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App. 2014). Accordingly, the trial court erred when it failed to limit its definitions of mental states to the result of appellant's conduct. *See Cook*, 884 S.W.2d at 491.

The State concedes the court's general definitions were incorrect, but contends the error was harmless. Appellant did not object to the definitions at trial; accordingly, any error in those definitions is reversible only if appellant was egregiously harmed such that he was denied a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). To determine the actual degree of harm we look to the entire record, the jury charge, and the state of the evidence as a whole, taking into account the contested issues and the weight of probative evidence. *Id.* We have reviewed the entire record of this case and concluded the evidence was sufficient to support the jury's verdict. In addition, the State did not emphasize the improper "nature of conduct" language from the charge in its argument, focusing instead on Escamilla's

injuries—the result of appellant's conduct—and how those injuries were caused. Finally, we look to the application portion of the jury charge. *See Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) ("In assessing harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, we 'may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge.'" (quoting *Cook*, 884 S.W.2d at 492 n.6)). The application paragraph in appellant's charge pointed the jury to the proper issue involved in a result-oriented offense. Specifically, the jury was instructed that to find the defendant guilty of aggravated assault, they must find that appellant "intentionally, knowingly, or recklessly caused serious bodily injury" to Escamilla. Consequently, we conclude appellant was not denied a fair trial; he did not suffer egregious harm due to the erroneous general definitions in the charge. We overrule appellant's fourth issue.

In his fifth and final issue, appellant argues the trial court erred by entering an affirmative deadly weapon finding because the State failed to provide adequate notice of its intention to seek such a finding. Appellant's indictment charged that he did:

> intentionally, knowingly and recklessly cause serious bodily injury to Maria Escamilla, hereinafter called complainant, by [1] striking complainant with a hand and hands and a lamp and [2] stabbing complainant with a knife and an unknown object, the exact nature and description of which is unknown and unknowable to the grand jury and [3] cutting complainant with a knife and an unknown object, the exact nature and description of which is unknown and unknowable to the grand jury, during the commission of the assault.

The jury instructions tracked the above language as did the deadly weapon special issue submitted to the jury. Appellant voiced no objection to this issue at any time.

"[A]ccused persons are entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution, if the State intends to pursue the entry of a deadly weapon finding." *Ex parte Beck*, 769 S.W.2d 525, 526 (Tex. Crim. App. 1989). The definition of deadly weapon includes anything that in the manner of its use is capable of causing serious

–11–

bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2014). In an aggravated assault case, notice is sufficient if the indictment alleges that some object or instrument caused serious bodily injury to the complainant. *See Gilbert v. State,* 769 S.W.2d 535, 536–37 (Tex. Crim. App. 1989). The State's inability to identify one or more of the deadly weapons alleged did not render its notice to appellant inadequate. *See Mixon v. State,* 804 S.W.2d 107, 108 (Tex. Crim. App. 1991).

Because appellant's indictment alleged that both named and unnamed objects caused serious bodily injury to Escamilla, we conclude appellant had sufficient notice that the State intended to pursue a deadly weapon finding. The deadly weapon special issue tracked the indictment. We overrule appellant's fifth issue.

We affirm the trial court's judgment.


/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130181F.U05

–12–



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

JOSE ISMAEL ARREOLA, Appellant

No. 05-13-00181-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-12-00581-N.
Opinion delivered by Justice Francis. Justice Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of December, 2014.