Elizabeth Annette CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 65179.

Court of Criminal Appeals of Texas, Panel No. 1.

Dec. 17, 1980.

Rehearing Denied Feb. 11, 1981.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty., Karen Chilton Beverly, Mary K. Ludwick and Robert E. Whaley, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and TOM G. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is from conviction for kidnapping. V.T.C.A. Penal Code, Sec. 20.03. Appellant pled guilty and filed an application for probation. The jury assessed punishment at five years.

In her second ground of error, appellant contends that "the trial court erred in permitting the prosecutor to argue facts to the jury that were not supported by the record regarding the defendant's intent."

Appellant, sixteen years of age at the time of the offense, had been hired to babysit for Shanita Perkins, an eighteen-month-old child. After caring for the child for approximately four months, appellant took Shanita from Dallas to San Antonio on April 29, 1977 without the permission of Shanita's mother, and without notifying anyone in Dallas of the child's whereabouts. Shanita's mother did not see her daughter nor was she notified that the child was alive until October 12, 1978.

During this eighteen month period appellant took the child from San Antonio to California, then to Denver, Colorado. In Denver, appellant stayed in the home of her former foster parents, Jack and Judy Burns, and eventually left Shanita in their care. An employee of the Denver Department of Social Services testified that appellant had contacted that agency in November of 1977 and expressed an interest in placing Shanita for adoption. Appellant reportedly represented to the agency that she was the mother of the child and the child's father was the appellant's pimp.

Appellant subsequently traveled alone to Tonguespoint, Oregon in order to join the Job Corps, leaving Shanita in Denver with the Burns family. Following approximately two weeks of work in the Job Corps appellant left Oregon and went back to Denver for a short time before traveling to the State of Washington. From Washington appellant went to San Francisco, California for a short time before returning to Washington. Shanita was still in Denver during this period.

On October 10, 1978, appellant was stopped by a Washington State Patrolman for operating an automobile with only one headlight. When appellant failed to produce a valid operator's license the officer initiated a computer check which disclosed an outstanding felony warrant authorizing appellant's arrest for the instant offense. Following her arrest appellant advised FBI agents of Shanita's whereabouts and the child was subsequently returned to her mother.

On direct examination appellant testified that she had not intended to kidnap the child. She stated that she was very depressed due to suffering a recent miscarriage, and because of the depression she had taken drugs. Further, that when she took Shanita appellant had been in a drug induced stupor and did not realize that she had taken the child with her to San Antonio until she "came out of" her intoxicated condition. Upon realizing what she had done and seeing newspaper accounts of the kidnapping, she became frightened and thereafter sought to avoid apprehension.

On cross-examination appellant testified as follows:

"Q. Elizabeth, at the time that you kidnapped Shanita, you were babysitting for another baby, weren't you?

"A. Yes, I was.

"Q. How old was that baby?

"A. I would say about five months.

"Q. How long had you been babysitting for it?

"A. About a month and a half.

"Q. Any reason you didn't kidnap that baby as opposed to Shanita?

"A. I was not as close to that baby as I was to Shanita, that baby was tak-

en very good care of, her mother was with her. I stayed with that baby—that baby was with me only maybe four or five hours out of a day and I didn't babysit on weekends and I never babysat it at night. That baby was taken very good care of, not that I was saying that Shanita was in terrible danger of her mother, I mean, I realize that her mother loved her but I just didn't feel at the time that Nina was being taken care of properly.

"Q. Okay. Would you tell the members of the Jury why you didn't think that Nina—who you call Nina, was being taken care of properly?

"A. Well, for one reason was because she was living in an apartment, a one bedroom apartment with four other people and Nina had a runny nose constantly when she was at my house. There was not one day that I did not see Nina without a runny nose. Sometimes she had a diaper rash, she wore clothes that were too small for her. Her mother had a very short temper with her, not that she didn't love her, she just had a short temper. I mean, Nina could be over at my house and playing with something that I did not say she couldn't but I didn't say she could, and her mother would get very upset with Nina. . . ."

The record reflects the following jury argument by the State's attorney which gives rise to appellant's complaint:

"[MR. WHALEY] Now, there is a theory—you can believe whatever you will but I submit to you that from the evidence that that young lady is knowledgeable of adoption procedure and people who adopt children and if she knows—as a matter of fact it is common knowledge around this nation that there are people who want children so desperately that they will pay money for them and a lot of money and she mistakenly took this child with the thought that she could sell it but she didn't have the contacts—

"MR. GLOVER: Your Honor, I object to that.

"THE COURT: Yes, I—

"MR. WHALEY: Your Honor, this is a theory from the evidence and I am entitled—I am drawing it from the evidence and I submit that I am entitled—

"THE COURT: Overrule the objection.

"MR. GLOVER: Note our exception to the Court's ruling.

"THE COURT: Yes, sir.

"MR. WHALEY: I preface this by saying that you can believe whatever you want. You say, why did she take the child and I am telling you that it is a reasonable deduction from the evidence that she believed she could sell it.

"MR. GLOVER: Objection to this entire line of argument, Your Honor.

"MR. WHALEY: Well, Judge, his objection—

"MR. GLOVER: It is not supported by any aspect of the evidence and I object to his argument, Your Honor.

"THE COURT: Yes—

"MR. GLOVER: My objection is that it is not supported by the evidence, it is improper argument and highly prejudicial and I object to it.

"THE COURT: You may have a bill.

"MR. GLOVER: Note our exception."

■ The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may "arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence. Nor should resort he had in argument to arouse the passion or prejudice of the jury by matters not properly before them." *Stearn v. State*, Tex.Cr.App., 487 S.W.2d 734; *Pena v. State*, 137 Tex.Cr.R. 311, 129 S.W.2d 667. In *Alejandro v. State*, Tex.Cr.App., 493 S.W.2d 230 we stated: "To receive the stamp of approval of this court, jury arguments need to be within the areas of: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Id.* at 231 (Citations omitted).

The State argues that the above argument constitutes a "reasonable deduction from the evidence." Careful examination of the record fails to disclose any evidence that appellant intended to sell the child. The record contains no argument or statement by defense counsel which can reasonably be construed as inviting the State's objectionable argument. The argument was calculated to "arouse the passion or prejudice of the jury by matters not properly before them." *Stearn v. State*, supra; *Pena v. State*, supra; see *Turrentine v. State*, Tex.Cr.App., 536 S.W.2d 219. The appellant's timely objection was overruled and the prosecutor was allowed to repeat the argument. We cannot conclude that appellant was not prejudiced by the improper argument.

Accordingly, the judgment is reversed and the cause remanded.