In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00118-CR


______________________________




GARY LYNN GEORGE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 01F0289-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 At approximately 1:30 a.m. on March 18, 2001, after hours of drinking, Gary Lynn George
failed to negotiate a curve on South Lake Drive in Texarkana, driving his one-ton wrecker truck
across the centerline and colliding with a Mazda 626 driven by Jessica Noel Smyth, killing her on
impact. A jury in the 202nd Judicial District Court of Bowie County convicted George of
intoxication manslaughter (1) and found he used a deadly weapon in committing the offense. George
was sentenced to twenty years' imprisonment and a fine of $10,000.00. On appeal, George argues
that the prosecutor was guilty of improper jury argument and that the evidence is insufficient to
sustain the deadly weapon finding. We affirm.

Improper Jury Argument

 In closing argument, the prosecutor asserted to the jury that George's accident reconstruction
expert "was paid to come in here and say whatever it took to get [George] off." 

 Improper Argument. 

 The Texas Court of Criminal Appeals maintains a "special concern for final arguments that
result in uninvited and unsubstantiated accusation of improper conduct directed at a defendant's
attorney." Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (quoting Orona v. State,
791 S.W.2d 125, 128 (Tex. Crim. App. 1990)). We share that "special concern" and must determine
whether the prosecutor's remark was improper.

 In reviewing final arguments, reviewing courts must consider the remarks at issue in the
context of the entire jury argument rather than isolated sentences. Denison v. State, 651 S.W.2d 754,
761 (Tex. Crim. App. 1983). Closing argument should facilitate the jury's proper analysis of the
evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the
admitted evidence alone. Campbell v. State, 610 S.W.2d 754, 756 (Tex. Crim. App. [Panel Op.]
1980). Proper jury argument must encompass summation of evidence presented, reasonable
deductions drawn from evidence, answers to opposing counsel's argument, or a plea for law
enforcement. Id.

 A comment on the credibility of a witness is permissible. "A prosecutor is allowed to argue
that the witnesses for the defense are not worthy of belief." Satterwhite v. State, 858 S.W.2d 412,
425 (Tex. Crim. App. 1993). Jury argument that vouches for or questions the credibility of a witness
is proper, so long as it involves a reasonable deduction from the evidence. See Loar v. State, 627
S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1981); see also Delgado v. State, 840 S.W.2d 594,
602 (Tex. App.-Corpus Christi 1992, no pet.). Similarly, it is proper for a prosecutor to attack the
defense's argument rather than the defense counsel. Howard v. State, 896 S.W.2d 401, 405 (Tex.
App.-Amarillo 1995, pet. ref'd); see also Tilbury v. State, 890 S.W.2d 219, 224 (Tex. App.-Fort
Worth 1994, no pet.) (statement implying defendant dishonest not improper because statement did
not directly accuse attorneys of lying or encouraging dishonesty).

 The State may not, however, strike at a defendant over the shoulders of his or her counsel or
personally attack the integrity of defense counsel. See Summers v. State, 147 Tex. Crim. App. 519,
521, 182 S.W.2d 720, 721-22 (1944). For instance, a prosecutor's argument constituted an improper
personal attack on counsel when that prosecutor stated to the jury: "I would caution you, ladies and
gentlemen, that they are both very experienced Defense lawyers. They know how to argue to get
people off the charges they are charged with." Orona, 791 S.W.2d at 128; see also Gomez v. State,
704 S.W.2d 770 (Tex. Crim. App. 1985) (improper jury argument when prosecutor stated defense
counsel manufactured evidence and was paid to do anything to get defendant "off the hook").

 It is "manifestly improper and prejudicial to the rights of the accused" for the prosecutor to
contrast the ethical obligations of prosecutors with those of defense attorneys by arguing that defense
counsel did not take the prosecutor's "sacred oath" to see that justice is done and that defense counsel
wishes the jury to set a guilty man free. Wilson v. State, 938 S.W.2d 57, 60 (Tex. Crim. App. 1996). 
It is also improper for a prosecutor to argue that defense counsel's "duty is to see that his client gets
off even if it means putting on witnesses who are lying." Bell v. State, 614 S.W.2d 122, 123 (Tex.
Crim. App. 1981); see also Bray v. State, 478 S.W.2d 89, 89-90 (Tex. Crim. App. 1972). While no
one fixed rule emerges to determine what is improper jury argument, we look for argument that
refers to defense counsel personally or argument that impugns opposing counsel's character. See
Mosley, 983 S.W.2d at 259. 

 Here, the prosecutor's comment is similar in nature to that in Bell and constitutes an
impermissible attack on defense counsel, although significantly less direct than the Bell attack. By
asserting that defense expert, Richard Turner, was paid to say whatever it took to get George off, the
prosecutor indirectly attacked the integrity of defense counsel by implying that counsel would allow,
even encourage, a witness to give false testimony before the trial court in order to get a defendant
off. We cannot say this comment qualifies as a permissible attack on the credibility of a witness
because this argument does not rely on reasonable deductions from the evidence, as sanctioned by
Loar, in order to question a witness' credibility. We do not find in the record any language indicating
the prosecutor's statement was directed at the defense's argument or any evidence that would support
the prosecutor's implied charge against defense counsel.

 Preservation of Error. 

 In order to preserve any error from improper jury argument, a party must object to the
argument and pursue the objection until the trial court rules adversely. Valencia v. State, 946 S.W.2d
81, 81 (Tex. Crim. App. 1997); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). That
is, a party must object to the argument, request an instruction for the jury to disregard, and then move
for a mistrial. Cockrell, 933 S.W.2d at 89; Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App.
1993).

 An argument that attacks the character of a defendant's attorney is not a constitutional
violation. (2) Mosley, 983 S.W.2d at 259. Instead, these arguments are simply outside proper jury
argument, and allowing them would constitute "other errors" governed by Rule 44.2(b) of the Texas
Rules of Appellate Procedure. Tex. R. App. P. 44.2(b); Mosley, 983 S.W.2d at 259. That being so,
an appellant cannot complain of improper jury argument for the first time on appeal. See Cockrell,
933 S.W.2d at 89.

 Here, George made no objection to the argument. We conclude he failed to preserve error
as to the prosecutor's jury argument by failing to object and pursue the objection to an adverse ruling. 
We overrule George's first point of error. 

"Deadly Weapon" Evidence

 Challenges to the sufficiency of the evidence to support a conviction require that we review
the evidence in the light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). 
More specifically, we must determine, viewing the evidence in such a light, whether any rational trier
of fact could find beyond a reasonable doubt that a vehicle is used or exhibited as a deadly weapon. 
Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). 

 To sustain a deadly weapon finding, we must find evidence that demonstrates the deadly
weapon is used or exhibited during the transaction from which the felony conviction is obtained. 
Id. at 738. We must find in the record evidence that others are actually endangered, "not merely a
hypothetical potential for danger if others had been present." Id. Anything, including a motor
vehicle, which is actually used to cause the death of a human being, is a deadly weapon. (3) Tyra v.
State, 897 S.W.2d 796, 799 (Tex. Crim. App. 1995); Ex parte McKithan, 838 S.W.2d 560, 561 (Tex.
Crim. App. 1992). This is necessarily so, because a thing which actually causes death is, by Penal
Code definition, "capable of causing death." See Tex. Pen. Code Ann. § 1.07(a)(17)(B) (Vernon
2003); Tyra, 897 S.W.2d at 799.

 The evidence at trial depicts the following events of the evening of March 17, 2001, and the
early morning hours of March 18, 2001: Beginning at or after seven o'clock in the evening, George
visited his sixteen-year-old neighbor for twenty to forty minutes, during which time George drank
four to six beers. Later that evening, George went to a local pub, where he stayed for some hours
and became so inebriated that, according to witnesses, he fell backward off a barstool. Throughout
his time at the pub, George always seemed to have a drink in his hand. After leaving the pub, at
approximately 1:30 a.m., George was driving his one-ton wrecker truck southbound on South Lake
Drive when the accident occurred. The fireman who extracted George from the truck testified he
smelled a "pretty strong" smell of alcohol on George's breath and in the truck. George admitted to
the paramedic treating him that he had consumed a six-pack of beer. The emergency room doctor
who treated George testified George appeared very inebriated on his arrival at the hospital. Clear precedents support a deadly weapon finding with evidence similar to that in this record. 
A jury convicted defendant Tyra of involuntary manslaughter for causing the death of a man by
reason of operating his vehicle while intoxicated. Tyra, 897 S.W.2d at 797. The jury further found 
Tyra used a deadly weapon in the commission of this offense. Id. Tyra argued that the jury's finding
was inappropriate since there was no evidence he actually intended to use the vehicle in such a way
as to cause serious bodily injury or death. Id. Relying on precedent and semantic analysis of the
definition of a deadly weapon, that court rejected his argument. Id. at 798-99.

 The Texas Court of Criminal Appeals rejected a similar argument a few months later. See
Walker v. State, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995). In Walker, the appellant pled guilty
to involuntary manslaughter by accident or mistake resulting from operation of a motor vehicle while
intoxicated. Id. at 812. The jury found Walker used his vehicle as a deadly weapon in the
commission of this offense. Id. Walker argued that the jury was not authorized to make such a
finding because the evidence established he was operating his vehicle as a means of transportation. 
Id. at 813. Since there was no evidence of his intent to use the vehicle as a weapon, Walker argued,
the jury was not permitted to make an affirmative finding he used a deadly weapon. Id. Relying on
its reasoning in Tyra, the Texas Court of Criminal Appeals held that mere operation of a motor
vehicle may constitute use of a deadly weapon and that no intent to use the vehicle as a weapon need
be shown. Id. at 814.

 In a case similar to the case before us, an individual was held to have used a deadly weapon
when he drove while intoxicated, crossed over into oncoming traffic, and collided with a car nearly
head-on, killing both passengers. Ray v. State, 880 S.W.2d 795, 795-96 (Tex. App.-Houston [1st
Dist.] 1994, no pet.). The evidence at trial established that Ray was, in fact, legally intoxicated, had
been driving erratically, and had collided with a pickup truck before causing the fatal collision with
the car. Id. at 797. Additionally, direct evidence showed that the fatal collision occurred entirely
within the eastbound lane of traffic, though Ray had been driving in the westbound lane. Id. Based
on that evidence, the jury could have found beyond a reasonable doubt that Ray had driven his
vehicle in such a way that it became a deadly weapon. Id.

 Here, too, the State presented evidence sufficient to enable a rational trier of fact to find
beyond a reasonable doubt George operated his vehicle in such a way that it became a deadly
weapon. The record demonstrates George used the vehicle as a deadly weapon "during the
transaction from which" the felony conviction is obtained. The evidence established George drove
his one-ton wrecker truck while intoxicated, causing the wreck which killed Smyth. It is this
collision from which the jury convicted George of intoxication manslaughter. Clearly, the record
also demonstrates that George's use of the vehicle posed an actual danger.

 The State's evidence sufficiently established that George's truck crossed over the centerline
into Smyth's lane. Expert testimony from Lieutenant Michael Henry and Officer Brian Griffith, both
of the Texarkana, Texas, Police Department, pointed out the physical characteristics of the accident
scene, from which they concluded George caused the collision. That evidence included the
positioning of the vehicles, the fact that debris from the collision was found in Smyth's lane of
traffic, and the location and nature of the marks left on the road by the vehicles. A resident of South
Lake Drive testified he heard the accident and was able to tell by the sound of the engines that
George was speeding as he came around the curve. George presented expert testimony from Turner
that, based on Turner's examination of the accident scene photographs and his inspection of the
vehicles, George was not at fault in causing the collision. 

 As the finder of fact, the jury serves as the exclusive judge of the credibility of the witnesses
and of the weight to be given their testimony. Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon
1981), art. 38.04 (Vernon 1979). When faced with the abundance of evidence contrary to Turner's
position, the jury was put to a decision regarding conflicting testimonial evidence. The jury is
empowered to consider that evidence along with and against all the other evidence presented at trial
and measure Turner's credibility and weigh his testimony accordingly. Obviously, the jury weighed
Turner's testimony and his credibility against all the physical evidence and expert testimony
supporting the State's position and found the fact issues in favor of the State.

 Viewing the evidence in a light most favorable to the verdict, we conclude the evidence was
sufficient to allow a rational finder of fact to find that George operated his vehicle in a manner that
rendered it a deadly weapon. We overrule George's second point of error.

 We affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 10, 2003

Date Decided: August 5, 2003


Publish
1. Tex. Pen. Code Ann. § 49.08 (Vernon 2003).
2. The Texas Court of Criminal Appeals overruled the former rule where counsel need not
object to a statement that was so egregious that no objection, instruction, or motion could cure the
error. See Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (overruling Montoya v.
State, 744 S.W.2d 15, 37 (Tex. Crim. App. 1987); Romo v. State, 631 S.W.2d 504, 505 (Tex. Crim.
App. 1982)). 

.
3. The Texas Penal Code includes as a deadly weapon "anything that in the manner of its use
or  intended  use  is  capable of  causing  death  or  serious  bodily  injury."  Tex.  Pen. Code  Ann.
§ 1.07(a)(17)(B) (Vernon 2003).



 mother he was the one who committed the crime, his
testimony that he had a conversation with his mother about the incident corroborates
Massey's testimony that such a conversation took place. In addition, O'Neal testified this
conversation occurred before he was questioned by Stephen Holmes, one of the
investigating officers. Massey also testified in the bill of exception that the statement he
overheard occurred a few days before Holmes came to the house to question O'Neal. 
 
          The factors which tend to show the untrustworthiness of the statement, i.e., the
testimony of Watson, Smith, and O'Neal that Lester was the guilty party, do not outweigh
the corroborating circumstances. The State also points out that, since the time Massey
overheard the alleged conversation between O'Neal and his mother, Massey divorced
O'Neal's mother and was, at the time of trial, living with Lester's mother-in-law. However,
any motive on the part of Massey to lie in an effort to get back at his former wife and
stepson is not a valid consideration in determining the trustworthiness of the statement, but
is a matter to be tested before the jury on cross-examination. See Davis, 872 S.W.2d at
749. 
          Under similar circumstances, courts have held it was error to exclude statements
against penal interest tending to exonerate a defendant. See Burks v. State, 876 S.W.2d
877, 905 (Tex. Crim. App. 1994); Davis, 872 S.W.2d at 749 (holding factors that might
undermine reliability did not outweigh evidence directly corroborating statement); James
v. State, 102 S.W.3d 162, 178-79 (Tex. App.‒Fort Worth 2003, pet. ref'd); Fonseca v.
State, 908 S.W.2d 519, 523 (Tex. App.‒San Antonio 1995, no pet.). Considering the
factors discussed above, we find the corroborating evidence, even in light of evidence
tending to undermine the reliability of Massey's statement, is sufficiently convincing to
clearly indicate its trustworthiness. Massey's statement that O'Neal confessed his guilt to
his mother is sufficiently corroborated that, if believed, it could create a reasonable doubt
as to Lester's guilt. O'Neal directly refutes he admitted his guilt to his mother in their
conversation, but whether Massey or O'Neal is to be believed is ultimately for the jury. The
trial court's ruling excluding Massey's statement was outside the zone of reasonable
disagreement and was an abuse of discretion.
          Where erroneous exclusion of evidence is the result of misapplication of the Rules
of Evidence and its admission is not claimed to be required by the United States or state
constitutions, we analyze harm under Rule of Evidence 103(a), which provides that error
may not be predicated on a ruling that admits or excludes evidence unless a "substantial
right" of the party is affected. Tex. R. Evid. 103(a); Potier v. State, 68 S.W.3d 657, 666
(Tex. Crim. App. 2002). The standard is the same as that under Rule 44.2(b). Tex. R.
App. P. 44.2(b); Potier, 68 S.W.3d at 666. A substantial right is affected when the error
had a substantial and injurious effect or influence on the jury's verdict. Johnson v. State,
43 S.W.3d 1, 4 (Tex. Crim. App. 2001). 
          In assessing the likelihood the error adversely affected the jury's decision, we
consider everything in the record, including all evidence admitted for the jury's
consideration, the nature of the evidence supporting the verdict, the character of the
alleged error, and how it might have been considered in connection with the other
evidence. Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We may also
consider the state's theory of the case, any defensive theories, closing arguments, and voir
dire. Id.
          The issue of who actually ran across the hoods of the cars was the critical issue in
the case. The defense theory was that O'Neal was the guilty party and that the other
witnesses had conspired with O'Neal to blame Lester. The defense brought evidence that
O'Neal and Watson had opportunity to conspire and that O'Neal's shoes, not Lester's, were
the proper size to leave the imprints on the cars. However, guilt was substantially
dependent on the jury's determination of Lester's credibility, and the jury had only his
uncorroborated testimony, absent Massey's statement that O'Neal had admitted guilt. In
view of the evidence from the investigating officers that only one individual committed the
crime, we cannot say the exclusion of Massey's testimony did not have a substantial and
injurious effect or influence on the jury's verdict. The error in excluding such evidence was
therefore harmful. The harm was compounded by the State's closing argument referring
to Lester's inability to present a witness to corroborate his testimony that O'Neal committed
the offense. The injurious effect the trial court's ruling had on the jury can be further seen
from the note the jury sent to the judge inquiring about the missing testimony. 
          The exclusion of Massey's testimony prevented Lester from adequately supporting
his defense, and the ruling substantially and injuriously affected the jury's verdict. We
therefore sustain Lester's first point of error.
 

          We reverse the judgment and remand the case to the trial court for further
proceedings.

                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 15, 2003
Date Decided:         November 5, 2003

Publish