

# NUMBER 13-17-00649-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

AGUSTINA HERNANDEZ HERNANDEZ,                              **Appellant,**

**v.**

THE STATE OF TEXAS,                                       **Appellee.**

### On appeal from the 107th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Rodriguez and Benavides[1]**
**Memorandum Opinion by Justice Benavides**

By three issues, appellant Agustina Hernandez Hernandez challenges her

conviction for possession of between fifty and two hundred pounds of marijuana, a

second-degree felony.   *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(5).

---

[1] The Honorable Nelda V. Rodriguez, former Justice of this Court, was a member of the panel when this case was orally argued but did not participate in this decision because her term of office expired on December 31, 2018.

Hernandez argues that: (1) the trial court erred by denying her motion to suppress; (2) it was error to permit the introduction of evidence of her immigration status; and (3) the State's closing argument warranted the reversal of her conviction and a new trial. We affirm.

## I. BACKGROUND

On April 8, 2017, Hernandez was arrested approximately 700 yards from the border with Mexico, along with other adults, and two bundles of marijuana were found in her vehicle. She was charged by indictment for the possession of marijuana. *See id.* Prior to a trial on the merits, the trial court held a hearing on Hernandez's motion to suppress.

### A. Suppression Hearing

Agent Jonathan Hanson of the United States Border Patrol (Border Patrol) testified that he received information that the remote video surveillance cameras utilized by Border Patrol showed individuals exiting the Los Fresnos canal and loading bundles into a vehicle. Agent Hanson stated he was near the area and responded when he noticed a vehicle on the opposite side of the canal from his location. He also explained the location was an area where people frequently cross the Rio Grande and he was familiar with the activities and location. As he approached the vehicle, Agent Hanson saw four to five people in the minivan and saw two bundles in plain sight. He stated that Hernandez was driving the minivan and complied with his directives to exit the vehicle. Agent Hanson had a canine officer respond and conduct a free-air sniff. The canine officer alerted to the presence of narcotics. Agent Hanson explained he and other agents who responded

arrested Hernandez and the other occupants of her vehicle. The bundles were taken to the Border Patrol station and field tested, yielding a positive test for marijuana.

Hernandez also testified at the suppression hearing. She stated she believed she was driving on a public roadway and was "cruising around." Hernandez explained that a friend had asked her to go pick up two men, who got into her vehicle with bundles. She stated she thought their truck had broken down, even though she stated she did not see a truck, and did not know them or why they were wet. She agreed that the men loaded the bundles in her vehicle. She also admitted that she was the driver, had control of the vehicle, and could have prevented the men from entering her vehicle.

The trial court denied the motion to suppress and continued to trial.

## B. Trial on the Merits

At trial, the State called Agent Hanson who explained he was patrolling near the Los Fresnos pump, west of Brownsville. He stated that the road that leads out to the pump is not well maintained or frequented, and that only the pump caretaker and an occasional fisherman are usually seen on it. Agent Hanson agreed with the State that if he had seen a vehicle out in that area, he would have gone to investigate why it was there, as the area was known for having illegal immigrants and narcotics pass through it. Agent Hanson was speaking to Border Patrol agent Marshall Maynard when they got a radio call from the remote video surveillance operator regarding "bodies coming out of the canal" in a nearby area and entering a vehicle. Agent Hanson stated he did not see anyone loading a vehicle personally, but saw Hernandez's minivan in the area with its headlights on and went to investigate. As he approached Hernandez on the driver's

3

side, he was able to observe bundles inside the vehicle. Agent Hanson explained the bundles were wrapped and painted, which is common among narcotics traffickers, and he recognized the distinct odor of marijuana. Hernandez complied with Agent Hanson's commands to step out of the vehicle and he spoke to her in Spanish. A canine unit was called out, did a free-air sniff, and alerted to the presence of narcotics. The occupants of the minivan were arrested, read their rights, and the adults declined to speak to authorities.

Defense counsel questioned Agent Hanson on his training and experience involving drug identification, if he had seen fisherman in the area at night, and if he recovered any kind of phone or GPS device from Hernandez. On re-direct questioning, the State asked:

State: The people arrested that particular day, were any of them U.S. citizens?

Defense: Objection, Your Honor, relevance.

Court: Overruled.

Hanson: I'm not positive. I'm going to have to check the report here. I think some of them were. But give me a second here. Yes, one of them.

State: And who was that?

Hanson: His last name is Salas, first name Eduardo

. . . .

4

State: Okay. And the defendant, Ms. Hernandez, was she a U.S. citizen?

Hanson: No.

State: Did you find any fishing equipment at all inside the vehicle?

Hanson: No.

The State next called Agent Rolando Caballero of the Border Patrol. Agent Caballero stated he was a canine handler, briefly explained the training he completed to be a canine handler, and described how he responded to the Los Fresnos canal area where he was asked to conduct a free-air sniff of the minivan. Agent Caballero testified that he was also tasked with testing the bundles when they arrived at the Border Patrol station and the bundles tested positive for marijuana. Agent Caballero read the individuals arrested their rights in Spanish. The State then asked:

State: Do you know whether or not Ms. Hernandez is an American citizen or not?

Caballero: At this moment of the arrest, I didn't, until we got to the station, her citizenship was determined there.

Defense: Your Honor, I'm going to ask the Court to grant me a running objection to this line of questioning.

Court: You will have a running objection.

. . . .

State: And when at the station, how was it determined that Ms. Hernandez was not a U.S. citizen?

5

Caballero:   They asked her to state her citizenship, and she stated she was from Mexico.

On cross-examination, defense counsel asked the following:

Defense:   And you testified that Ms. Hernandez and some other individuals there were not U.S. citizens, is that correct?

Caballero:   Correct.

Defense:   You testified that there was one U.S. citizen there, is that correct?

Caballero:   Correct.

Defense:   What was the name of that individual?

Caballero:   I don't remember the name of the individual, but it was her son.

. . . .

Defense:   And her son is how old?

. . . .

Caballero:   Possible [sic] 10. I didn't ask his age because he was a minor.

Defense:   He was young.

Caballero:   Yes.

Defense:   Do you know whether she has any other U.S. citizen children?

Caballero:   That I know of, no.

Defense:   Do you know whether she was at any point married to a U.S. citizen?

Caballero:   That I know of, no.

Defense:   Do you know whether she has any legal proceedings to become a U.S. citizen in the works?

6

Caballero:    No.

Defense:      Do you know whether being involved in illegal drug trafficking would negatively affect a person's opportunity to become a U.S. citizen?

Caballero:    To be honest, I don't know if she was applying for anything. I don't know.

Defense:      Okay.

Caballero:    It could affect you, but I don't know if she was applying for something.

Defense:      You don't know if she was applying.

Caballero:    No.

Defense:      But it could affect you if you were applying.

Caballero:    Yes, it could affect you.

Defense:      Negatively.

Caballero:    Correct.

Defense:      Do you know typically if somebody is not a U.S. citizen, if they get a conviction for narcotics, whether they will be deported or not?

Caballero:    Correct.

Defense:      And so, if they have U.S. citizen children, maybe they will be deported and separated from their families?

Caballero:    That, I do not make that call.   I don't know what happens after they get transferred from our custody to the U.S. Marshals or whoever takes them.

Defense:      Sure.   I understand.   You don't make that call, right?

Caballero:    No.

Defense: You're not the one who deports people, right?

Caballero: Correct.

Defense: You are not the one who makes a determination that this person can no longer remain in the United States, right?

Caballero: Correct.

Defense: But it does happen when somebody gets convicted, right?

Caballero: That I know of, I haven't heard it.

During closing argument, the State argued:

State: We do know that everyone in that car at that time that Agent Hanson brought that Car to a stop were in control and in possession of the marijuana. Think about that. It's against our law in the State of Texas to be in possession of marijuana. That's our law. Whether we like it or not, the Legislature has put it that way, and it's not changing. An individual who has possession of 90 pounds of marijuana, that's a lot of marijuana. How she got it or where she got it or whatever, we don't know. The defendant did not testify and we cannot use that against her.

Defense: Objection, Judge, he is talking about the fact that she didn't testify in his closing.

Court: I'll sustain.

Defense: Your Honor, I move for a mistrial at this time.

Court: That will be denied.

State: All I said is we can't use that against her.

Court: Okay. Go ahead.

State: We are not using that against her. All we are going on is what the evidence does show.

8

Hernandez's defense counsel agreed in his closing argument that the State had proven the bundles contained marijuana. He also explained that the State was required to prove Hernandez intentionally and knowingly possessed the marijuana. Defense counsel continued:

Defense: What do you take with you if you are going to traffic drugs? What do you take with you? Your ten-year-old son? You take a ten-year-old son to go drug trafficking? They asked Agent Hanson, is she a U.S. citizen? Is she a U.S. citizen? Because you know Mexicans are bringing drugs, they're bringing guns and some of them are good people, but they are rapists. What does she have to lose? What does she have to lose? She is a Mexican. She is not here legally. She is probably doing drugs. They know all the drugs, the dealers. Who does that? Who was a [sic] ten-year-old in the car? He is a U.S. citizen. Who was he? That's what she had to lose. She has got other U.S. citizen children. Did they tell you . . .

State: Objection, there is nothing about that in evidence.

Defense: It is not in the narrative.

Court: I'll sustain.

Defense: It's not in the narrative. They don't want it in there. What about her husband? What is somebody is applying for citizenship?

State: Objection, this matter is not in evidence.

Court: Overruled.

Defense: It was in evidence.

. . . .

Defense: What happens if you get convicted and you're trying to adjust your status. You heard her say, well, I don't know. What do you mean you don't know? You want her to get in the car, people get in, you don't even know her. You know what?

9

> She had to know there was marijuana because I know it's marijuana through my years of training and experience.
>
> Well, what happens to somebody who gets convicted of this kind of crime? Do they get ripped apart from their family? I don't know.

During the final part of closing, the State argued:

State: Counsel wants to talk about a narrative like it's all the State's fault for bringing the agents to testify that this was marijuana, and it was found out here on this road on April the 8th in a car driven by the defendant.

But let me switch around a little bit, because this attorney is trying to say this lady is a Mexican National and she is going to lose her kids, loose [sic] her husband.

Defense: Your Honor, that was the evidence put on by the State. I object to this line of closing.

Court: Overruled. Go ahead.

. . . .

State: You know, the State doesn't have to prove absolutely everything, that they put their left foot in front of that right or right foot in front of their left and so on. We don't do that. The State has to prove beyond a reasonable doubt the elements. What are the elements? The date, where this took place, in Cameron County, Texas, did they have care, custody and control? Yes. And was it marijuana? Yes.

Defense: Your Honor, I'm objecting, the State has to [prove] intent and knowledge as well, Judge.

Court: It will be overruled.

. . . .

State: Now, the law of parties comes in, because somebody is doing something illegal, and I aided and assisted them. I am just as guilty as they are of that which they are doing in a wrongful way. Now, counsel brings up knowledge and intent. If you

10

don't have anything to argue in a criminal case, you argue knowledge and intent. Well, how in the world does the State ever prove knowledge and intent? By your actions. Your actions speak louder than anything else.

Counsel wants you to believe that on this particular day, Ms. Hernandez came down 281 and came along there because her mechanic told her, and this is what he said in opening remarks today, told her to take go out there and pick up some people. Well, stop and think for a moment. We don't know that the people that the Border Patrol saw on the cameras are the same people that were in this car. When Agent Hanson stopped them, we don't know, because he did not see that. All we do know is Agent Hanson stopped this vehicle on the west side of that canal, and in that vehicle were four adult persons and they had marijuana. Much the same as law enforcement would do at the mall here in Brownsville, the mall in Harlingen, the mall in San Antonio, the mall in anyplace else in the United States.

Now, if I am a person from some other country, I am not going to violate any law of the country that I am in, in the hopes that I can get some sort of citizenship. If this defendant is trying to get citizenship, we don't know that. But let me ask you this, if every one of you were in Mexico and they stopped you with 90 pounds of marijuana, what do you think they would do to you? They would throw us in jail and we would sit there. Now, I would probably be sitting there a whole lot longer than some of you, but that's the way life is. But I know that I would be treated differently if I was in control of marijuana in Mexico than what we treat Mexican Nationals in this country, and that's a matter of fact. We have what's being paid good money in this country to watch our borders. And if we just sat back and say, you, okay, Border Patrol agent, you sit in your car here at this corner, and you wait for somebody to come by. Well, it's going to be realized that they can just duck around and go around that Border Patrol agent, and that Border Patrol agent won't go to get him, we've wasted our money.

. . . .

11

We know for a fact that this vehicle was here on the west side of the canal. We know for a fact there was marijuana in that car. And we know for a fact that there were four individuals, all of a [sic] whom were arrested for possession of marijuana. This lady, regardless of what story there may be, whether she is going by for a mechanic, or whether she is going by some other means, is out there driving on a road to the river and very suspiciously, that's where the individuals are being located. It was her intent and knowledge go out there. It's her intent and knowledge to have everything that's in her car, much the same as I asked in voir dire yesterday morning, or yesterday afternoon.

Are you in control of everything that goes in and out of your car? Yes. I am in control. She is in control. She knew what was going on. Don't be fooled by her attorney's remarks.

I ask you to find this lady guilty because she is guilty, and if she was so worried and concerned about losing her kids because of her status, she should have thought of that before. And if you really care about your family, you wouldn't be breaking the law.

The jury found Hernandez guilty. The trial court sentenced her to ten years' imprisonment in the Texas Department of Criminal Justice–Institutional Division, probated for ten years with no fine. Hernandez did not file a motion for new trial. This appeal followed.

## II. MOTION TO SUPPRESS

By her first issue, Hernandez alleges the trial court committed error by denying her motion to suppress. Hernandez argues that the Border Patrol agents had nothing more than a "mere hunch," rather than reasonable suspicion to approach her vehicle.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated

12

standard. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At a motion to suppress hearing, the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony. *Id.* at 190. Therefore, we give almost total deference to the trial court's determination of historical facts. *Love v. State*, 543 S.W.3d 835, 840 (Tex. Crim. App. 2016). However, we review de novo whether the facts are sufficient to give rise to reasonable suspicion in a case. *Lerma*, 543 S.W.3d at 190. When the trial court does not make explicit findings of fact, as in the case before us, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Id.* We will sustain the ruling of the trial court if it correct under any applicable theory of law. *Id.*

**B.      Applicable Law and Discussion**

Under the Fourth Amendment, a traffic stop must be supported by reasonable suspicion of criminal activity. *See* U.S. CONST. amend. IV. In order to determine if reasonable suspicion existed for the stop of the vehicle, the United States Supreme Court has listed several factors to consider:

1.      the characteristics of the area in which the officer encounters the vehicle;

2.      the proximity to the border;

3.      the usual patterns of traffic on the particular road;

4.      officer's previous experience in detecting illegal entry and smuggling;

5.      information on recent illegal border crossings in the area;

6.      the driver's behavior, such as erratic driving or obvious attempts to evade officers;

13

7. physical aspects of the vehicle and the vehicle's load; or

8. an extraordinary number of passengers, their behavior, or persons trying to hide.

*United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975); *Saenz v. State*, 842 S.W.2d 286, 289 (Tex. Crim. App. 1992).

During his testimony, Agent Hanson stated he had received information that Border Patrol's remote video surveillance cameras had detected individuals exiting the canal. He additionally stated that Hernandez's vehicle was the only one in the area and there was hardly ever traffic on that road, especially at the time of night Agent Hanson approached Hernandez. Testimony showed that Hernandez was stopped 700 feet from the border canal between the United States and Mexico. Agent Hanson testified that he had training and experience in detecting illegal entry and narcotics, and upon approaching Hernandez's vehicle, he was able to see bundles of narcotics in plain view through the windows.

Based on the testimony presented and the reasonable suspicion factors as set forth in *Brignoni-Ponce*, the trial court could have found that Agent Hanson's facts amounted to more than a "mere hunch" and reasonable suspicion existed for the stop. *See* 422 U.S. at 885; *Lerma*, 543 S.W.3d at 190. Therefore, we overrule Hernandez's first issue. *See Lerma*, 543 S.W.3d at 190.

### III. IMMIGRATION STATUS

By her second issue, Hernandez alleges the trial court committed reversible error when it permitted evidence to be introduced regarding her status as an illegal immigrant during trial. By her third issue, Hernandez alleges the State's closing argument

14

warranted the reversal of her conviction.

**A. Admission of Evidence**

### 1. Standard of Review

We review a trial court's ruling to admit or exclude evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* We may not substitute our own decision for that of the trial court. *Id.* In applying an abuse of discretion standard, we will not disturb the trial court's evidentiary ruling if it is correct under any applicable theory of law. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Error in the admission of evidence is non-constitutional error and is subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b); *Taylor v. State*, 286 S.W.3d 571, 592 (Tex. Crim. App. 2008). "We have construed this to mean that an error is only reversible when it has a substantial and injurious effect or influence in determining the jury's verdict." *Taylor*, 286 S.W.3d at 592. "We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect." *Id.*

### 2. Applicable Law and Discussion

Relevant evidence is generally admissible; irrelevant evidence is not. *Gonzalez*, 544 S.W.3d at 370; *see* TEX. R. EVID. 402. Relevant evidence is evidence which has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. *Gonzalez*, 544 S.W.3d at 370; *see* TEX. R. EVID. 401.

15

Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence. *Gonzalez*, 544 S.W.3d at 370.

Texas courts have long held that the national origin or race of the defendant is an inappropriate focal point for argument by the prosecution. *Riascos v. State*, 792 S.W.2d 754, 758 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). The State argues that Hernandez's immigration status became an issue in this case due to questions of Agent Hanson regarding his training to investigate illegal narcotics and immigration. The State argues Hernandez's immigration status became relevant to understand why Agent Hanson went to investigate her vehicle.

Hernandez, however, objected to the relevance of the State asking if people in the vehicle were citizens, and the trial court overruled that objection. The State continued on that same line of questioning, asking specifically if Hernandez was a U.S. citizen. If the State was trying to show why Agent Hanson went to investigate Hernandez's vehicle after getting a report of "bodies" exiting the canal, then it was sufficient to show that some of the individuals in the vehicle were illegal immigrants. However, the State continued questioning both Agent Hanson and later, Agent Caballero regarding Hernandez's specific immigration status. Hernandez's immigration status was not relevant to the crime she was on trial for, possession of marijuana. *See Gonzalez*, 544 S.W.3d at 370. Therefore, we find the trial court erred in allowing the admission of Hernandez's immigration status over the relevancy objection.

16

After finding error, we must determine if the error affected Hernandez's substantial rights considering: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the error. *Gonzalez*, 544 S.W.3d at 373; *see Gutierrez v. State*, ___S.W.3d___, No. 14-18-00201-CR, 2019 WL 3945893, *11 (Tex. App.—Houston [14th Dist.] Aug. 20, 2019, no pet. h.). We consider everything in the record and may consider the jury instructions, the parties' theories of the case, and the closing arguments. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). Generally, error is harmless if very similar evidence is admitted without objection. *Gutierrez*, 2019 WL 3945893 at *11; *see Estrada v. State*, 313 S.W.3d 274, 302 n. 29 (Tex. Crim. App. 2010); *see also Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." (quotation omitted)). The Texas Court of Criminal Appeals has held that an appellant can waive an earlier preserved objection,

> the rule that a later statement of 'no objection' will forfeit earlier-preserved error is context-dependent. By that we mean that an appellate court should not focus exclusively on the statement itself, in isolation, but should consider in the context of the entirety of the record. If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as 'waived,' but should resolve it on its merits.

*Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013).

17

Although we find the trial court committed error by allowing the State to introduce Hernandez's immigration status into the trial, it was Hernandez's questioning that led to an extended highlighting of her illegal immigration status. The State did elicit testimony from both Agents Hanson and Caballero that Hernandez was not a U.S. citizen. However, Hernandez's counsel then asked Agent Caballero who in the vehicle was a U.S. citizen; if Hernandez had other U.S. citizen children; if Hernandez was married to a U.S. citizen; if Hernandez was in proceedings to obtain legal status in the U.S.; if drug trafficking would affect paperwork for immigration; if a conviction could be a deportable offense; and if she would be separated or deported with her children. Additionally, in closing arguments, Hernandez's counsel again brought up Hernandez's immigration status extensively, speaking about the information he introduced through his questions of Agent Caballero, as well as information that was not introduced through any witnesses. After defense counsel's closing, the State referenced that Hernandez was an illegal immigrant who brought her son to pick up narcotics with her; stated in a hypothetical that people would be treated differently if this offense had occurred in Mexico; and how Hernandez's actions placed her in her current situation.

Hernandez's counsel's actions rendered the trial court's error harmless. Although Hernandez properly objected to the State's initial introduction of evidence regarding her immigration status, Hernandez's counsel continued to make her status the focus of his cross-examination with Agent Caballero and the focus of his closing arguments. Moreover, the State presented substantial evidence to prove the elements of possession of marijuana. *See Gonzalez*, 544 S.W.3d at 373; *see also Gutierrez*, 2019 WL 3945893

at * 11. There was little question that Hernandez was in control of the vehicle in which Agent Hanson first viewed the marijuana bundles. *See Gonzalez*, 544 S.W.3d at 373. Although the State addressed Hernandez's immigration status briefly during its examination of Agents Hanson and Caballero and in its closing, the main emphasis on Hernandez's immigration status came from her counsel. *See id.*

The State presented overwhelming evidence that Hernandez's vehicle, which she was driving, contained bundles of marijuana in plain view as the agents first approached her. Agents testified that they received an alert from their remote cameras showing people exiting the canal, Hernandez's vehicle was the lone vehicle in the same general area, and Agent Hanson explained that the area where Hernandez was located is known for issues with illegal narcotics and immigration trafficking. Therefore, in evaluating if the admission of evidence of Hernandez's immigration status violated her fundamental rights, we hold that the error in the admission did not have a "substantial and injurious effect" or influence on the jury's verdict. *See Taylor*, 286 S.W.3d at 592; *see also* TEX. R. APP. P. 44.2(b). Although it was error to allow the admission of Hernandez's immigration status into evidence, because Hernandez was the party who placed repeated emphasis on it, there was no harm. We overrule Hernandez's second issue.

## B. Closing Arguments

By her third issue, Hernandez argues that the State's closing argument improperly commented on Hernandez's failure to testify, attempted to negate elements of the offense, and stated that the jurors would be treated differently if they had been arrested in Mexico for the same offense as Hernandez.

19

### 1. Standard of Review and Applicable Law

The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it "may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence." *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (quoting *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim. App. [Panel Op.] 1980)). It should not "arouse the passion or prejudice of the jury by matters not properly before them." *Campbell*, 610 S.W.2d at 756. Proper jury argument generally falls within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to an argument of opposing counsel; and (4) plea for law enforcement. *Milton*, 572 S.W.3d at 239.

The court of criminal appeals has stated that "arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney." *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). However, even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in light of the record as a whole, the argument was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the defendant into the trial. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *see Molina v. State*, ___ S.W.3d ___, No. 01-18-00317-CR, 2019 WL 4065508, *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, no pet. h.). The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. *Wesbrook*, 29 S.W.3d at 103.

The focus has always been upon encouraging the jury to decide the case on the evidence in front of it rather than encouraging juries to reach a decision based upon information outside the record. *Milton*, 572 S.W.3d at 240. This is because improper references to information outside the record are generally designed to arouse the passion and prejudice of the jury, and, as such, are inappropriate. *Id.*; *see Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). Generally, the bounds of proper closing argument are left to the sound discretion of the trial court. *Milton*, 572 S.W.3d at 240; *see Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010).

**2.      Discussion**

**a.      Elements of the Offense**

Hernandez complains of three different statements made during the State's closing argument. Her first point is that the State improperly argued to the jury that it was not required to prove every element of the offense. The complained of argument stated:

> State:      You know, the State doesn't have to prove absolutely everything, that they put their left foot in front of that right or right foot in front of their left and so on. We don't do that. The State has to prove beyond a reasonable doubt the elements. What are the elements? The date, where this took place, in Cameron County, Texas, did they have care, custody and control? Yes. And was it marijuana? Yes.

> Defense:    Your Honor, I'm objecting, the State has to [prove] intent and knowledge as well, Judge.

> Court:      It will be overruled.

21

Although the State did not specifically mention "intent" and "knowledge" in this particular part of its argument, it did properly characterize that the State was required to prove the elements beyond a reasonable doubt. Later in closing, the State argued:

> Now, counsel brings up knowledge and intent. If you don't have anything to argue in a criminal case, you argue knowledge and intent. Well, how in the world does the State ever prove knowledge and intent? By your actions. Your actions speak louder than anything else.

The jury charge contains the elements the State is required to prove in order to convict Hernandez of possession of marijuana. The argument fell within the confines of permissible jury argument. *See Milton*, 572 S.W.3d at 239. The trial court properly overruled Hernandez's objection to this part of the closing argument.

### b. Failure to Testify

Next, Hernandez argues that the State improperly commented on her failure to testify. During its closing, the State argued:

| | |
|---|---|
| State: | We do know that everyone in that car at that time that Agent Hanson brought that Car to a stop were in control and in possession of the marijuana. Think about that. It's against our law in the State of Texas to be in possession of marijuana. That's our law. Whether we like it or not, the Legislature has put it that way, and it's not changing. An individual who has possession of 90 pounds of marijuana, that's a lot of marijuana. How she got it or where she got it or whatever, we don't know. The defendant did not testify and we cannot use that against her. |
| Defense: | Objection, Judge, he is talking about the fact that she didn't testify in his closing. |
| Court: | I'll sustain. |
| Defense: | Your Honor, I move for a mistrial at this time. |
| Court: | That will be denied. |

22

State:    All I said is we can't use that against her.

Court:    Okay.  Go ahead.

State:    We are not using that against her.  All we are going on is what the evidence does show.

A comment on a defendant's failure to testify violates both the state and federal constitutions as well as Texas statutory law. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011).  The defendant has a separate Fifth Amendment privilege not to testify at either the guilt or punishment phases of trial. *Id.*  In assessing whether the defendant's Fifth Amendment right has been violated, courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument. *Id.*  Thus, the implication that the State referred to the defendant's failure to testify must be a clear and necessary one. *Id.*  The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.*  In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. *Id.*  Comments about a defendant's failure to testify can be permissible if they are a "fair response" to the defendant's claims or assertions. *Id.* at 892.  Additionally, if the evidence in the record supports the prosecutor's remarks, there is no error. *Id.* at 893.

In opening statements, defense counsel had told the jury that Hernandez had received a call from a friend, who asked her to go pick someone up, that "this is her mechanic calling her and telling her, somebody needs a ride" to explain why Hernandez

23

was out near the river. However, evidence that her mechanic asked her to go pick up a friend was only brought before the jury in defense counsel's opening and closing arguments, not through the testimony of any witness. The State stated that the jury could not hold Hernandez's failure to testify against her, even though there may have been facts they wanted to know that were missing. Although the State did make a comment on Hernandez's failure to testify, it was in response to defense counsel's claims made during argument, and there was evidence in the record to support the State's remarks. *See id.* at 892–93. Therefore, the State's comment was not error.

### c.    State's Final Argument

The final argument Hernandez complains of was made by the State as it concluded its closing argument. The State spoke about Hernandez being a "Mexican national" and facing the possibility of losing her children and husband, to which Hernandez objected. However, it was Hernandez's counsel who introduced the evidence during his cross-examination of Agent Caballero. Hernandez's counsel repeatedly questioned the agent about what would happen to Hernandez and her family in certain situations. The State also referenced in a hypothetical scenario what would happen if the jurors or it would be facing similar charges in a country such as Mexico and how the procedures would be different. Hernandez did not object to the hypothetical scenario introduced.

A harm analysis is only employed when there is error, and ordinarily, error occurs only when the trial court makes a mistake. *Hawkins v. State*, 135 S.W.3d 72, 76 (Tex. Crim. App. 2004). Hernandez's objection was to a misstatement of the evidence, stating that the State introduced questions regarding her husband children. However, our

24

review of the record shows that Hernandez was the party who asked how this type of offense would affect Hernandez and her family; therefore, Hernandez's objection that this "evidence was put on by the State" is incorrect. The trial court properly overruled the objection to the State's argument. Additionally, Hernandez never objected to the State's hypothetical scenario in Mexico argument. Therefore, no error was preserved for this Court to analyze. *See* TEX. R. APP. P. 33.1. We overrule Hernandez's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
31st day of October, 2019.